(No. 11655.—Reversed and remanded.)

MORRIS SMOLENSKY, Appellee, vs. THE CITY OF CHICAGO, Appellant.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. MUNICIPAL CORPORATIONS—*city may regulate junk business whether wholesale or retail.* A junk dealer does not cease to be a junk dealer because of the magnitude of his business or the manner in which it is conducted, whether at wholesale or retail, and a city has power, under legislative grant, to tax, license and regulate such business and direct its location. (*City of Chicago* v. *Lowenthal,* 242 Ill. 404, explained.)

2. SAME—*city may regulate the location of junk business by ordinance passed after junk dealer has begun his building.* Where a junk dealer has secured a building permit for the construction of a warehouse and has begun his building, the city, upon subsequently discovering that the building is for the conduct of the junk business, may regulate the location of such business by ordinance requiring the consent of the majority of the owners of frontage in the block, and may prevent the conduct of the business without such frontage consent, although it cannot interfere with the construction of the building.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (WILLIAM H. DEVENISH, and ROY S. GASKILL, of counsel,) for appellant.

MORRIS K. LEVINSON, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the city of Chicago from a decree of the circuit court of Cook county restraining it from interfering with or molesting the appellee in the conduct of his wholesale junk business in that city.

The cause was heard upon the bill, answer, replication and evidence. It appeared that the appellee had been engaged in the junk business in the city of Chicago for four-

teen years, during all that time conducting his business without a license from the city of Chicago and without securing frontage consents from adjacent property owners. The last eight years his place of business was on West North avenue, and his sales averaged about $60,000 a year. On March 5, 1917, he obtained from the building department of the city a permit for the erection of a warehouse on North Western avenue and immediately started its construction. On March 26 the walls of the warehouse had been completed, on April 10 the roof had been completed, and on April 20 the building was completed except for the hanging of doors, the insertion of glass in the window frames and the installation of elevators. It was a two-story and basement brick building 36 feet wide by 100 feet long, representing an investment of $20,000. On May 1, 1917, the appellee moved his stock from his former location on West North avenue to the building on North Western avenue. On May 2 police officers of the city ordered the complainant to cease the conduct of his junk business until he had secured a license and frontage consents in accordance with the ordinances of the city and to cease the completion of his building, and threatened his arrest unless he complied with their demands. The appellee is the owner of the entire block on which the warehouse is built, his investment in the real estate being $5400, and he intends to use the building and yard in the conduct of the junk business. The city had no knowledge of the purpose to which the warehouse would be put at the time the permit for its construction was issued nor until March 22, 1917, when it received such knowledge.

On March 26, 1917, the city council passed an ordinance known as section 2267½ of the revised code, which was published on April 10 and went into effect on April 20, regulating the location of junk shops and yards. Among the ordinances in force in the city of Chicago is section 2253 of the revised code, which prohibits the keeping of a junk

shop without a license, and is the same as the ordinance which in the case of *City of Chicago* v. *Lowenthal,* 242 Ill. 404, was held not to apply to wholesale dealers in junk. Section 2267, as amended in 1912, prohibits the location, establishment, conduct or maintenance of a junk shop or junk yard within 400 feet of a church, hospital or public or parochial school, and also provides that "it shall be unlawful for any person, firm or corporation to locate, establish, conduct or maintain any junk shop or junk yard in the city on any lot fronting on any street in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, or within one hundred (100) feet of any such street in any such block, without the written consent of a majority of the property owners, according to frontage, on both sides of the street: *Provided,* that in determining whether two-thirds of the buildings on both sides of such street are used exclusively for residence purposes any building fronting upon another street and located upon a corner lot shall not be considered: *And provided further,* that the word 'block,' as used in this section, shall not be held to mean a square, but shall be held to embrace only that part of the street in question which lies between the two nearest intersecting streets, one on either side of the lot on which said junk shop or junk yard is to be located, established, conducted or maintained." Section 2267½, which is the ordinance passed on March 26, 1917, is as follows: "It shall be unlawful for any person, firm or corporation to locate, establish, conduct or maintain any junk shop or junk yard in the city, either at wholesale or retail, on any lot fronting on any street in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence and wholesale or retail store purposes or used exclusively for wholesale or retail store purposes, or within 100 feet of any such street in any such block, without the written consent of a majority of the property owners, according to frontage, on both sides of

the street: *Provided,* that in determining whether two-thirds of the buildings on both sides of such street are used exclusively for residence and for wholesale or retail store purposes, any building fronting upon another street and located on any corner lot shall not be considered." * * *

The appellee contends, in support of the decree, that a junk shop is a shop where junk is dealt in in small quantities, and was so defined in *City of Chicago* v. *Lowenthal, supra,* and that the power granted by the legislature in clause 95 of section 1 of article 5 of the Cities and Villages act, to "tax, license and regulate second-hand and junk stores and yards, and to forbid their purchasing or receiving from minors, without the written consent of their parents or guardians, any article whatsoever, and to direct the location thereof," is limited to such junk shops and yards as deal in junk in small quantities. It was held in the *Lowenthal case* that the ordinance involved there did not apply to wholesale junk dealers, but a junk shop was not defined as a room or building where junk is dealt in in small quantities. It was said that "within the meaning of this ordinance a junk shop is a room or building where junk is dealt in in small quantities." The opinion shows why the ordinance would be unreasonable if applied to a wholesale dealer such as was defendant in that case, and the ordinance was held not applicable in such cases, not because of any want of power in the city council to regulate wholesale dealers, but because the ordinance in question, if construed to apply to wholesale dealers, was unreasonable in its requirements. A junk dealer does not cease to be a junk dealer because of the magnitude of his business or the manner in which it is conducted, whether at wholesale or retail. He is still a junk dealer, and his store or shop or warehouse, of whatever size, is still a junk shop or store or warehouse, and if a yard is used in connection with the business it is a junk yard. The city has power, under the legislative grant, to tax, license and regulate his business and direct its location.

The regulations which are appropriate to a small retail junk business may be unreasonable when applied to a wholesale business, and this was the basis of the decision in the *Lowenthal case*. The provisions of the ordinance which in that case were held unreasonable in their application to wholesale dealers cannot be enforced against the appellee in the conduct of his business as a wholesale junk dealer, but the provisions of section 2267½ are expressly extended to wholesale as well as retail dealers.

In *People* v. *Busse*, 240 Ill. 338, it was held that the city had no power to provide by ordinance that no junk shop, regardless of the manner in which it was conducted, should be located or maintained without the written consent of a majority of the owners of frontage in the block in which it was to be located. Since that case, however, the legislature, in 1911, amended clause 95 of section 1 of article 5 of the Cities and Villages act by adding to that paragraph, in regard to junk stores and yards, the words, "and to direct the location thereof." It is argued that the legislature, in adopting this amendment, must have had in view the decision of the Supreme Court in the case of *City of Chicago* v. *Lowenthal, supra,* and therefore the clause must be construed as restricting the power to retail junk shops and yards; but, as we have seen, the decision in the *Lowenthal case* was not as to the power of the city council over junk dealers, whether wholesale or retail, but was as to the reasonableness or unreasonableness of the ordinance. This ordinance did not go into effect until more than a month and a half after the building permit had been issued to the appellee, when the building was substantially completed. The ordinance does not prohibit the erection or regulate the construction of any building. The completion of the building in accordance with the permit would not be a violation of the ordinance, and the city officers had no right to interfere with such construction. The appellee had, however, moved his entire stock in trade and merchandise to the building

and was engaged in conducting a junk shop there. This he had no right to do without obtaining the frontage consents required by the ordinance, and he was not entitled to an injunction restraining the city officers from interfering with him in the conduct of that business without obtaining such frontage consents.

The decree of the circuit court will be reversed and the cause remanded, with directions to the circuit court to enter a decree restraining the city from preventing the plaintiff from completing his building.

*Reversed and remanded, with directions.*