KALIKTAS IGNACIUNAS, RELATOR, v. WARNER I. RISLEY, INSPECTOR OF BUILDINGS OF THE TOWN OF NUTLEY, IN THE COUNTY OF ESSEX, AND THE TOWN OF NUTLEY, DEFENDANTS.

Argued December 15, 1922—Decided August 13, 1923.

K. I. purchased a corner lot in the town of Nutley, and applied to the inspector of buildings for a permit to erect a store and dwelling thereon. The plans and specifications submitted for the proposed building complied with the building code. The application was refused on the ground that a zoning ordinance of Nutley prohibited the erection in the district in which the lot of K. I. was located, a building to be used for store purposes. *Held, first,* that the provision of said ordinance which prohibited K. I. from erecting said store and dwelling upon his property was void as violative of the rights of private property, guaranteed by the state and federal constitutions; *second,* that said prohibition was not a valid exercise of the police power in the interest of the public health, safety and welfare; and *third,* that K. I. was entitled to a peremptory writ of *mandamus* to compel the inspector of buildings of Nutley to issue to him a permit for the erection of said store and dwelling.

On *mandamus.*

Before Justices KALISCH, BLACK and KATZENBACH.

For the relator, *Whiting & Moore.*

For the defendants, *William P. Hurley* and *Edward M. Basset* (of New York).

The opinion of the court was delivered by

KATZENBACH, J.   This is an application for a writ of *mandamus* to compel the inspector of buildings of the town of Nutley to issue a permit to the relator for the construction of a dwelling and store property on a tract of land owned by him, located at the southeast corner of Conover avenue and Yale street, in Nutley. The relator acquired the property on June 15th, 1922. There are no covenants or restrictions in the relator's deed forbidding the erection of a dwelling and store building upon the property. On March 28th, 1922, the board of commissioners of Nutley passed a comprehensive zoning ordinance, and included the relator's tract of land within what is termed in the ordinance, "Residence B. District." The provisions of the ordinance relating to residence "B" district are as follows:

"Within any residence, 'B' district, as indicated on the building zone map, no building or premises shall be used for other than one or more of the following three specified purposes:

"(1) Any use hereinbefore specified as permitted in residence 'A' districts.

"(2) A dwelling, detached or semi-detached, for not more than two families or two housekeeping units.

"(3) An orphanage, old peoples' home, charitable institution not of a correctional nature, dispensary, sanitarium, nursing home, dormitory, convent, boarding or lodging-house or boarding school; provided there is no advertising on or visible from the exterior of the premises."

These provisions prohibit the erection of the store and dwelling upon the relator's land which he desires to build. It is admitted that the plans and specifications of the proposed building comply with the building code of Nutley, and that the only grounds for the refusal of the inspector of buildings to issue a permit were that the proposed building is to be used as a store and is to be located within twenty feet of the front property line of the lot. The location of the proposed building on the lot has been waived by the defendants, which leaves

for consideration the sole question as to whether a building permit can be withheld because the premises, when erected, are to be used as a store.

The defendants justify their refusal to issue a permit upon the ground that the state has, by legislation, delegated to municipalities the exercise of its police power, and that the provisions of the zoning ordinance referred to are a proper exercise of the police power in the interest of the public health, safety and welfare. The acts of the legislature which purport to grant to municipalities the power to enact, by ordinance, the provisions in question, are a supplement to an act entitled "An act concerning municipalities," approved March 27th, 1917; approved April 20th, 1920 (chapter 240 of the laws of 1920), and a supplement to said supplement approved March 22d, 1921 (chapter 82 of the laws of 1921). The 1921 act, which was amended by chapter 234 of the laws of 1922, gives the governing body of each municipality power by ordinance to regulate and limit the height, number of stores, and bulk of buildings, hereafter erected, and to regulate and determine the area of yards, courts and other open spaces, and for said purposes to divide the municipality into districts. The 1920 act gives the power to each municipality, by ordinance, "to regulate and restrict the location thereafter of trades and industries, and the subsequent location of buildings designed for a specified use in any designated area, and may divide the municipality into districts of such number, shape and area as it may deem best suited to carry out the purposes of this act. For each such district, regulations may be imposed, designating the trades and industries that shall be excluded or subjected to special regulations and designating the uses for which buildings may not be erected or altered. Such regulations shall be designated to promote the public health, safety and general welfare." It is the provisions of the 1920 act upon which the defendants rely in this case. To us it seems doubtful if the ordinance, so far as it relates to the question at issue, is within the powers delegated by the state to the municipality. The delegation of power is to regulate and

restrict the location of trades and industries and the subsequent location of buildings designed for a specified use in any designated area. By the exercise of this power of regulation and restriction, the municipality has sought, by the ordinance, to prohibit the erection and use of a store for retail purposes in a large area of Nutley. A right to "regulate and control" the driving of cattle in streets does not give power to prevent it altogether. *McConvill* v. *Jersey City,* 39 *N. J. L.* 38. An ordinance providing that no telephone wires shall be stretched across the public street without consent of the township committee is not a regulation or restriction within the meaning of a law providing that telephone companies may use streets subject to such regulations and restrictions as the corporation authorities may impose. *Summit* v. *N. Y. & N. J. Tel. Co.,* 57 *N. J. Eq.* 123. Where a park commission is authorized by a legislature to enact rules for protecting, regulating and controlling highways, it has not the power to prohibit all traffic. *Barnes* v. *Essex County Park Commission,* 86 *N. J. L.* 141. It is unnecessary, however, to hold that the board of commissioners of Nutley exceeded the power delegated to them by the legislature in prohibiting stores in the district in which the relator's property is located, for the reason that we are of the opinion that the ordinance, in so far as it prohibits the relator from erecting on his property a store, is void, as violative of the rights of private property guaranteed to the relator by the federal and state constitutions.

Article 1 of section 16, and article 4, section 8 of the state constitution, provide that private property shall not be taken for public use without just compensation. Section 1 of the fourteenth amendment to the federal constitution provides that no state shall deprive any person of life, liberty or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law.

The right to acquire property, to own it, to deal with it, and to use it, as the owner chooses, so long as the use harms nobody, is a natural right. This does not owe its origin to

constitutions. It existed before them. *Spann* v. *Dallas,* 235 *S. W. Rep.* 513. It is, however, a right guaranteed by our constitutions. It is a right necessary to the existence of organized society. The protection of this natural right is one of the reasons which prompted men to form governments. The protection of private property is the aim of every well-considered form of government. The right of private property has been called the keystone of the arch of civilization. A government which fails to protect the right of private property cannot endure. Men will not undergo the labor and hardships necessary to the acquisition of property if they find that the ownership and the enjoyment thereof is not to be protected. With the right of ownership and possession, goes the right to use, enjoy and dispose of the property owned. The substantial value of property lies in its use. If the right of use be denied, the value of the property is lessened or destroyed. A law which forbids a certain use of property deprives it of an essential attribute. The result in effect is a proscription of its ownership. *Spann* v. *Dallas, supra.* The defendants, however, say that the right of private property is subject to the police power of the state and must yield to such measures as are designed to promote the public health, safety and general welfare of a community. This, as a general proposition, is true. But the police power is based upon public necessity and only public necessity can justify its use. The abridgment of the rights of the individual is the usual result of its exercise. It should never be exercised unless it is clear that the object to be attained is so essential to the public health, safety and welfare as to fully justify its exercise. The use of the police power has grown in recent years, and courts have sustained laws and ordinances as valid, which formerly would have been declared invalid and invasions of private rights. Its use affords an easy route to the attainment of ends otherwise impossible. Each case must be considered separately and tested by these general principles. In the present case the question to be determined is whether or not the provisions of the ordinance which prevent the relator from

using his property for a store are necessary for the health and safety of the public of Nutley, for, unless the use of said property for store purposes reasonably endangers or threatens the public safety, health or welfare, the abridgment of its contemplated use is an invasion of the inherent and constitutional rights of the relator. A provision of an ordinance which assumes to be a police regulation, but which in reality is designed to deprive one of the use of his property under the pretence that it is enacted to promote the public welfare, safety and health, will be set aside as an invasion of the right of private property. Let us, then, test the provisions of this ordinance, in so far as they relate to the relator's property under these well-established principles of the law.

The defendants do not claim that a grocery and meat store is a nuisance in a residence locality or elsewhere. They claim that the health and safety of the public demand the exclusion of stores in residential districts, for the following reasons: The first is that people in their homes need quietude, especially when ill and during the early morning hours. A store brings noise by the coming and going of customers and the delivery of merchandise. We see no relation between stores and noise. It is a matter of common knowledge that during most of the days of a week, stores are closed early in the evening, so that no noise emanates from them, while the occupants of many private homes spend the evening and sometimes the morning hours in the playing of musical instruments, which prevents their neighbors from obtaining, through sleep, repose and refreshment. There are doubtless many people who would prefer to live next to a store than next to a private dwelling occupied by lovers of music. Some stores are noisy, some are quiet. The same is true of homes. On this ground we see no justification for invoking the police power to exclude stores from residential districts.

The next contention is that sidewalks and roadways in the vicinity of stores are more dangerous to children and aged people than in residential districts. The coming and going of trucks and delivery wagons to stores add, it is claimed, to

the dangers of the streets and sidewalks. We do not think this contention is supported in fact. There are streets in many residential districts which are, by reason of being well paved or through thoroughfares, more used by trucks and pleasure cars than streets in commercial districts, and so rendered more dangerous to pedestrians. The drivers of motor cars, which are the greatest danger to the life and limb of pedestrians, seek and use the best paved roadways whether in a residential or business district. We see no such relation between a store and a dangerous condition of sidewalk and street, which justifies on this ground the invoking of the police power to prohibit a store in a residential section. To regulate and control traffic so as to eliminate, as far as possible, the danger to other users of highways, is proper; but to prohibit stores, because they may increase the danger in the use of a highway is not, in our opinion, a proper exercise of the police power.

The defendants next contend that stores create litter and dust. Excelsior, wrapping paper and refuse are scattered about. This is deleterious to health and increases the fire hazard. Litter, dust, pieces of paper and refuse are found about many neglected homes. These matters can be regulated by general ordinances. The fact that, in some instances, stores may have been in this condition, affords no justification either for assuming that the proposed store of the relator will be kept in this condition, or for invoking the police power to prohibit property from being used as stores.

The final argument advanced in favor of this provision of the ordinance is that misplaced stores in the heart of a residential section often start a blighted area. Tenants move from surrounding houses. Public health and safety are concerned in the prevention of blighted areas. Hence, it is lawful to prohibit stores in residential communities to prevent blighted areas. This argument is not appealing. It is true that in growing cities there are often created what is termed blighted areas. They may, in some instances, have come from the placing of stores in residential sections. Blighted areas,

however, more frequently arise by the purchase, in some residential section of a city, of properties by members of a race different in color or nationality from those who have been living in that section, which prompts the other residents in that section to move to other sections of the city more congenial. An ordinance which would obligate persons of different nationalities or religion or color to live in different and specified sections of a city would, we think, be held unreasonable and discriminatory. So, some people would prefer to live where there are stores. Others would prefer their exclusion from the districts in which they reside, but to prohibit them in a residential section by ordinance is not, we think, a valid exercise of the police power. In arriving at this conclusion we are not unmindful of the fact that many of the features of this ordinance, which is a typical zoning ordinance, are permissible as a valid and proper exercise of the police power. For example, the regulation and determination of the area of yards, courts and other open spaces is proper in congested districts, and a valid exercise in the interest of public health of the public power. So that limitation of the height of buildings is a proper regulation in the interest of public safety.

The ordinance will not be set aside in its entirety, but will be held invalid as to the prohibition sought to be enforced against the relator. The fact that the relator purchased the property after the passage of the ordinance makes no difference, as the relator stood in the position of his grantor and obtained by the conveyance all the rights with respect to the property which the grantor possessed, and among which was, we think, the right to use the same for the purpose of erecting thereon a store and dwelling of the character proposed. A peremptory *mandamus* will be awarded directing the inspector of buildings of Nutley to issue to the relator a building permit. The relator is entitled to costs.