No. 12,630.

HEDGCOCK, BUILDING INSPECTOR *v.* PEOPLE EX REL. REED.

(13 P. [2d] 264)

Decided June 27, 1932.

Mr. THOMAS H. GIBSON, Mr. FRANK L. HAYS, Mr. GEORGE HETHERINGTON, for plaintiff in error.

Mr. ERNEST MORRIS, Mr. C. E. WAMPLER, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

WILLIAMS, as chief building inspector of Denver, refused to issue a permit to Reed to construct a store building at the southwest corner of Colfax avenue and Adams street, only for the reason that the proposed structure was to be built, not fifteen feet back from the sidewalk line as provided in the zoning ordinance, but up to the line. Reed was unwilling to accept a permit which would require him to set his building back in accordance with the provision of the ordinance, and seeking the sort of permit which would allow him to build to the sidewalk, he applied to the district court for a writ of mandamus. To a judgment awarding the writ Williams prosecutes error. Two points are urged: First, that the ordinance is controlling and concludes Reed; and, second, that mandamus may not be invoked.

At the trial it fairly appeared, and the court found, that Colfax avenue for many blocks east and west of Adams street, intersecting, was, and for many years had been, a business street, on which private residences were no longer being built. It may be proper to observe that the same general condition as to Colfax avenue property was found to obtain in an inquiry early in 1924. *Weicker Co. v. Denver,* 75 Colo. 475, 226 Pac. 857. The court also found that on property along Colfax avenue in the vicinity of the corner involved, the buildings are near or quite out to the sidewalk line, and that on the southeast corner of Colfax and Adams, the improvement, a gasoline station, the pumps and abutments of which, by ordinance defined to be a building, stands within eight feet of the line. The court's analysis of the situation showed that along Colfax avenue for many blocks either way from the Reed corner the ordinance had not been observed. On such facts the court adjudged that the refusal of the building inspector to issue the permit was so arbitrary and unreasonable as to make the ordinance un-

constitutional in its operation and effect; and with the court's judgment we are in accord.

On the subject generally, following *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303, we have approved the doctrine and purpose of zoning ordinances and sustained their constitutionality. *Colby v. Board,* 81 Colo. 344, 255 Pac. 443. But in the opinion in the Colby case, Mr. Justice Adams, speaking for the court, was mindful to observe that it might be conceded as an abstract statement ''that the power must not be exercised so arbitrarily or unreasonably as to make the ordinance unconstitutional in its operation and effect.'' If this wise and reasonable reservation is to be given consideration, the record here presents fair opportunity, for with all the adjoining corners and neighboring properties enjoying that which the chief building inspector would deny to Reed, the latter's appeal to a court of justice ought not to be in vain. The learned trial judge sensed the very right of the controversy, and we may not be less awake to the equities of the property owner. The validity of an ordinance, by the terms of which the owner of property is to be circumscribed in its use, ''is to be determined,'' said the court in *Village of Euclid v. Ambler Realty Co., supra,* ''not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality.'' The only justification for laws and regulations of the nature of the zoning ordinance under examination is that in some aspect of the police power they promote the public welfare. *Village of Euclid v. Ambler Realty Co., supra.* It is fundamental under our system of government that a municipality may by ordinance require the owner of property to so use it that the public health and safety will be best conserved, and to that end police power may be exercised; but not less fundamental is the inherent right of the owner to erect buildings covering such portions thereof as he may elect, and put his property to

158

any legitimate use. *Willison v. Cooke*, 54 Colo. 320, 130 Pac. 828. We are not unmindful that the Willison case was decided before the enactment of the zoning ordinance invoked by Williams in justification of his act, but we note no difference in principle. The earlier ordinance, as well as the later, in general application, gives function to inherent police power, but when in application to particular situations, as both here and in the Willison case, the official clothed with power to issue a permit for the construction of a building, objecting to no feature of the plans or purposed use of the building, withholds the permit because the applicant will not consent to fix the location of his proposed building fifteen feet back of the sidewalk line, such exercise of power, in the light of the record, is arbitrary and unreasonable. *Denver v. Protective Ass'n*, 76 Colo. 86, 230 Pac. 598; *Weicker Co. v. Denver, supra; Ignaciunas v. Risley*, 98 N. J. L. 712, 121 Atl. 783. This determination gives potency to the following language in *Colby v. Board, supra*: ''This decision is not to be construed as passing upon or approving each and every provision of the Denver zoning ordinance, nor as fixing its application to every circumstance that may arise. We limit ourselves to the facts before us, and observe the caution that obtains in the Euclid case, supra, wherein it is said: 'It is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, as far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases may arise directly involving them.' '' In final disposition of this phase of the controversy we may well adopt the language of the Supreme Court of Illinois, that ''The ordinance as here applied has produced an arbitrary and oppressive result, and no particular or serious suggestions in defense of its provisions have been presented for our consideration.'' *People v. Village of Oak Park*, 331 Ill. 406, 163 N. E. 445.

It is claimed in behalf of the building inspector that mandamus does not lie, and that Reed's only remedy

is to be found in the charter of Denver. The charter provisions allow an appeal from the building inspector to a so-called board of adjustment, and the decisions of that board, the charter says, may be reviewed by a court of record by certiorari. Denver Municipal Code, 1927, pp. 115-119. It is argued that unless the procedure outlined in the charter be pursued, and within the time which it fixes, one aggrieved by the action of the building inspector is precluded, and resort to mandamus, as attempted here, is unavailing. The first answer is that a city charter cannot repeal provisions of the Civil Code, nor control jurisdiction of courts. *People v. District Court,* 78 Colo. 526, 242 Pac. 997. Secondly, since in the circumstances of the record the ordinance sought to be enforced by the building inspector, as determined below, and approved here, was inapplicable, the board of adjustment was without power to consider the situation. *Krumgold v. Mayor,* 102 N. J. L. 170, 130 Atl. 635. In that case it was held, that "Where a zoning ordinance is ineffective to deprive an owner of property of his right to use the same for store purposes, no appeal to a board of appeals constituted under said ordinance is necessary as a prerequisite for an application for a writ of mandamus;" and in *Williams v. Gage,* 3 N. J. Misc. 1095, 130 Atl. 721, where it was contended, as here, that "certiorari of the action of this board is the proper remedy," that court said that certiorari "would be inefficacious. It is not the proper remedy." Mandamus was awarded. In *Lutz v. Kaltenbach,* 102 N. J. L. 718, 131 Atl. 899, it was held that mandamus was proper to compel the superintendent of buildings to issue a permit, without requiring relators to appeal to the board of adjustment, where refusal to issue permit was placed on the ground that construction of proposed addition would violate provisions of invalid municipal zoning ordinance. Such a board, the court said, has "no authority or jurisdiction to act as an appellate body for the purpose of reviewing the legal or equitable character of the building inspector's act in allowing or

rejecting an application for a building permit, nor to pass upon the question as to whether the provisions of the zoning ordinance are in furtherance of the proper exercise of the police power of the municipality.''

The trial court rightly resolved both points and the judgment is affirmed.