## No. 13,566.

HEDGCOCK, BUILDING INSPECTOR *v.* PEOPLE EX REL. ARDEN
REALTY AND INVESTMENT COMPANY.
(57 P. [2d] 891)

Decided April 6, 1936.

Mr. JAMES D. PARRIOTT, Mr. HARRY C. RIDDLE, Mr. ROB-
ERT J. KIRSCHWING, for plaintiff in error.

Mr. ERNEST MORRIS, Mr. C. E. WAMPLER, for defendant
in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the
court.

AN action in mandamus. Writ issued requiring plain-
tiff in error, building inspector of Denver, to grant
relator, appearing in the name of the people, defendant

in error, a permit to erect a store building on its property. The reason assigned for refusing the permit was that relator's property is within an area zoned for residence purposes, as evidenced by Denver's zoning ordinance of 1925.

As to zoning designation, not denied by relator, the contention is that, as applied to its property, the ordinance is "arbitrary, capricious, unreasonable, oppressive and discriminatory," and operates to deny it the "equal protection of the laws as provided by the Fourteenth Amendment to the Constitution of the United States and deprives relator of its property and of the use thereof without due process of law and without just compensation contrary to the provisions of the Constitution of the United States and of the Constitution of the state of Colorado and of sections 3, 15 and 25 of the Bill of Rights of said Constitution."

The property involved faces south on East Twenty-third avenue, immediately west of an alley between Cherry and Dexter streets. The alley is twelve feet wide. Across the alley to the eastward is a two-store business building some forty feet high, extending rearward the full length of relator's property, and facing East Twenty-third avenue. The room next the alley is occupied by a grocer, and the adjoining one by a druggist. At the rear of the drugstore is an activity known as the Park Hill Book Club, and another known as the Frances Permanent Wave Shop, the latter conducted commercially. A barber shop is operated in the basement of the building. Farther to the rear, 2317 Dexter street, in a separate building is the Park Hill Beauty Salon. Immediately across from the drugstore on Dexter street, is the Park Hill School of Music, operated for business purposes. Directly across East Twenty-third avenue from relator's property, are two stores: fruit and vegetables, cleaning and dyeing. Eastward from the stores last mentioned, across the alley and facing the same avenue, are six other stores, in which are conducted the following

businesses: grocery and market, tailor and cleaner, bakery, dry goods, hardware, including plumbing and heating, and a second drugstore. Across the street southwesterly from relator's property, and adjoining the fruit store mentioned above, is a house in which is conducted an insurance and real estate business. Many other businesses are conducted in the vicinage. In the main, the major businesses referred to were in full operation before, and at the time of, the adoption of the zoning ordinance. Generally, the testimony shows that for about a block the territory east and west of relator's property has long been used mostly for business, and is unattractive for residence purposes. A double track street railway traverses East Twenty-third avenue at the point in question and for many blocks eastward and westward therefrom. Automobiles and trucks in great numbers are constantly parked in and around what the witnesses call this ''business center.''

Six witnesses, four called by relator and two by respondent, were examined. Of these, one was a woman familiar with the situation, four were experienced real estate operators and the other was secretary-engineer of the public activity having to do with the administration of the zoning ordinance. The three real estate men testifying on call of relator were generally in accord to the effect that the block on East Twenty-third avenue between Cherry and Dexter streets, was a business center, seventy-five per cent thereof being used as business property, and that there was great demand for additional store space in that vicinity. They said that other than some downtown districts, this particular business center is one of the very best in Denver, in popularity as such and in rental values; that for business purposes relator's property is worth $3,500, while for residence purposes it is worth from $200 to $350. The clear inference from their testimony is that prior to the adoption of the zoning ordinance the block referred to was a business center and has continued so, and that it ought never to have

been zoned otherwise. One of these witnesses, having unchallenged knowledge, said that for a period of sixteen years not a residence had been built within two blocks of this business center. He explained that he attributed the condition "to the fact there was business—everybody considered that a business zone or district." The woman witness, long acquainted with the premises, said that business had increased at this point, as had noise and traffic. In short, all these witnesses believed, and testified, that the proposed store building was needed, would not adversely affect values, and would constitute but additional business facilities in an area already devoted to business, and where there was demand for more business housing.

Although an experienced and qualified witness, called by respondent, testified that the erection of the proposed store building would reduce the value of neighboring residence property—he being the only witness so testifying—the court was justified in deducing from all he said, that the witness believed the center involved in this controversy ought not to have been zoned for residential purposes and is not such a community now. We quote two questions and his answers:

"Q. Can you refer * * * to any situation in the City and County of Denver where a business center has developed in the nature of that on East Twenty-third avenue between Cherry and Dexter streets, that has been zoned as Residence A? Can you find any other place where this situation exists, to have a dozen or eighteen business houses zoned as Residence A? A. I don't think there is.

"Q. There is no other section of that character? A. That is, not as bad as that. That's a bad situation there."

The secretary-engineer witness gave no testimony calculated to justify the original zoning of the district for residential purposes; on the contrary, the plain inference to be drawn from what he said is that the area is a business center and that the zoning ordinance should have conformed to that evident fact. "I don't think," he

said, "there is any other place within the City and County of Denver where there is a business territory of this character that has been zoned as a Residence A zone." He further testified that, "With reference to any other place within the City and County of Denver where business has been placed in a Residence A zone, or a Residence A zone has been created, that has as many business places as this, * * * I can't mention one now where it is as intensively developed." Again he said: "I will say there are business centers that are as extensively developed, but they are shown on the zone map as business zones."

Considering the entire testimony, we conclude the trial judge was well advised in his findings, which we quote:

"The situation shown by the evidence to exist in the district involved in this litigation has no parallel anywhere else in the city. Consequently, the action of this court in this case need not necessarily establish a precedent or affect in anywise conditions existing in other parts of the city. In other words, the case will and should stand on its own facts.

"It seems to me that the experience of the last nine years since the passage of the Zoning Ordinance has clearly demonstrated that the classification of this district as a Residence A district was an error. It is one which could not probably have been anticipated. Errors were bound to have been made at this time, and it is surprising, I think, that the board did not make more. This was one of the errors made. The evidence demonstrates to my mind that it is distinctly out of step with the march of time and progress to attempt to perpetuate the mistake the board made nine years ago. I think it should be rectified as soon as possible, and this appears to be a good opportunity. I believe the evidence establishes clearly, and I so find, that the property described in the complaint, as well as that immediately surrounding it, is more valuable for business purposes than any other purpose, and is particularly suitable for business use. I fur-

ther find that any injury to the nearby residence property by the construction of the proposed building would be negligible. In the light of the conditions disclosed by the evidence existing at this locality, the enforcement of this ordinance and the adherence to the classification contained in the ordinance is unreasonable and arbitrary, and should not be upheld. Without further elaboration the writ of mandamus is made peremptory.''

1. In broad outline, but only so, we have held the zoning ordinance invoked by the building inspector to be constitutional. *Colby v. Board,* 81 Colo. 344, 255 Pac. 443. In that case we cited *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 47 Sup. Ct. 114, 71 L. Ed. 303, said to be the ''final and decisive ruling.'' Metzenbaum, Law of Zoning, 147. The Supreme Court of the United States limited its decision by saying, ''It is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, so far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases arise directly involving them.'' Mr. Justice Adams, speaking for our court in the Colby case, said: ''This decision is not to be construed as passing upon or approving each and every provision of the Denver zoning ordinance, nor as fixing its application to every circumstance that may arise. We limit ourselves to the facts before us, and observe the caution that obtains in the Euclid case.'' And ''The power must not be exercised so arbitrarily or unreasonably as to make the ordinance unconstitutional in its operation and effect.'' Applying the doctrine of those decisions, we held in a specific instance that to uphold the ordinance would work an arbitrary and oppressive result and granted relief as sought here. *Hedgcock v. People,* 91 Colo. 155, 13 P. (2d) 264. Considering the findings of the trial court here, well supported by evidence, the holding there is in point. ''When, if ever,'' said the United States Supreme Court in the Euclid case, ''the provisions set forth in the ordi-

nance in tedious and minute detail, come to be concretely applied to particular premises, including those of the appellee, or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable." That courts do inquire as to the reasonableness of a zoning ordinance in its application to a given situation, see *Zahn v. Board of Public Works,* 274 U. S. 325, 47 Sup. Ct. 594, 71 L. Ed. 1074. Upon findings not more indicative of denial to the owner of the reasonable use of his property than here, the Supreme Court of the United States (reversing the Supreme Judicial Court of Massachusetts—260 Mass. 441) said: "That the invasion of the property of plaintiff in error was serious and highly injurious is clearly established; and, since a necessary basis for the support of that invasion is wanting, the action of the zoning authorities comes within the ban of the Fourteenth Amendment and cannot be sustained." *Nectow v. Cambridge,* 277 U. S. 183, 48 Sup. Ct. 447, 72 L. Ed. 842. Discussing the Nectow case, Metzenbaum (in his Law of Zoning, 193) says the Massachusetts court was reversed "because the zoning in question was unreasonable and therefore unconstitutional in that it unnecessarily and arbitrarily limited the use of a certain parcel of property for a purpose that was not justified under the *admitted* and *determined* facts and circumstances."

■ 2. We think the relator properly resorted to mandamus. That is what we held in *Hedgcock v. People, supra,* where the cases are reviewed. See, also, *Gabrielson v. Borough of Glen Ridge* (N. J.), 176 Atl. 676, 679; *Nectow v. Cambridge, supra; Zahn v. Board of Public Works, supra,* where mandamus was the writ employed. It admits of the requisite inquiry and determination. More is not to be desired.

We perceive no error. Let the judgment be affirmed.

Mr. Justice Burke, Mr. Justice Bouck and Mr. Justice Holland dissent.