No. 16,383.

CROSS ET AL. *v*. BILETT ET AL.

(221 P. [2d] 923)

Decided August 14, 1950.

Messrs. CALVERT & THRASHER, for plaintiffs in error.

Mr. JOSEPH N. LILLY, for defendant in error Rotola.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, for defendants in error Board of Adjustment and City and County of Denver.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

JOHN ROTOLA applied to the building inspector of Denver for permit to erect a one-story masonry filling station and home appliance store. The application was denied for the reason that it was for a nonconforming

use in a residence "B" zone. Appeal was taken to the board of adjustment where both consenting and objecting petitions were filed, and upon hearing, whereat three neighbors, appearing in person, consented and ten objected to the issuance of the permit, the board made finding that the property was more suited for business uses than for residential development and granted the application. Upon certiorari by plaintiffs in error as owners of neighboring property, judgment was entered in the district court dismissing the petition and ordering permit issued for the nonconforming use. Challenge is raised by plaintiffs in error to the sufficiency of the record certified by the board, and to the sufficiency of the evidence to support its findings, but in view of our determination of the principal issue involved, that question need not be considered.

Under the provisions of the Charter Zoning Amendment, section 219A, Charter, Municipal Code of 1927, "The Council may provide for the appointment of a Board of Adjustment, and in the regulations and restrictions adopted pursuant to the authority of this amendment may provide that the said Board of Adjustment may, in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained." Thereunder was adopted chapter LXXXI, article V, section 2190B, of the Municipal Code of 1927, whereby it is provided that, "When in its judgment the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, the board of adjustment may, in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purposes and intent as follows: * * * (10) Permit the location * * * in any

residence district of any use or structure authorized in any other residence district or in any business district. *Provided,* there shall be on file with the said board the consents, duly signed and acknowledged, of the owners of 80 per cent of all the land within such area as the said board shall have determined to be specially affected by such proposed use or structure, [except certain uses not herein involved]."

Reversal is here sought chiefly on the ground that the board of adjustment failed to determine or designate the area specifically affected by such proposed use, and that there were not on file the consents of the owners of 80 per cent of all the land within such area, as required by the ordinance above quoted.

██ Admitting its complete disregard of the 80 per cent provision of the ordinance, it is first suggested by the attorneys for the petitioner and the board of adjustment that the power of the board, in hardship cases such as this one, is derived directly from the charter without regard to any provision of ordinance. This suggestion is merely stated without argument or citation of authority. It is based upon the provision of the charter, Municipal Code of 1927, charter, section 219A, G(3), giving the board of adjustment power "To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done." This basis of support for the action of the board is not sound for the reasons, first, that applicant did not base his claim for nonconforming use on any contended hardship; second, that the zoning board made no finding of unnecessary hardship, which is essential (*Scaduto v. Town of Bloomfield,* 127 N.J.L. 1, 20 A. [2d] 649), and, third, that the purpose of that provision of the charter was not to provide for substantial changes in zoning

districts for nonconforming uses which result in virtual rezoning of certain property therein; but, rather, to permit minor departure from the literal terms of the statute where justice so requires. As stated by the court in *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. (2d) 128, 168 A.L.R. 1:

"The plain intent and purpose of the statute is to permit, through the Board of Adjustment, the amelioration of the rigors of necessarily general zoning regulations by eliminating the necessity for a slavish adherence to the precise letter of the regulations where, in a given case, little or no good on the one side and undue hardship on the other would result from a literal enforcement.

"The board cannot disregard the provisions of the statute or its regulations. It can merely 'vary' them to prevent injustice when the strict letter of the provisions would work 'unnecessary hardship.' "

But the principal reason asserted by the board of adjustment for ignoring the provision requiring consent of the owners of 80 per cent of all the land within such area as the board shall have determined to be specifically affected by the proposed use, is that the requirement is unconstitutional. It is boldly stated in the brief that in passing the provision so relied on, the council "closed its eyes to the fact that such a provision had long before been held unconstitutional," citing *Curran Co. v. Denver,* 47 Colo. 221, 107 Pac. 261, and *Willison v. Cooke,* 54 Colo. 320, 130 Pac. 828, as so holding. Both these cases were decided prior to the present zoning ordinance, but *Menzel v. Niles Co.,* 86 Colo. 320, 281 Pac. 364, *Hedgcock v. People ex rel.,* 98 Colo. 522, 57 P. (2d) 891, and *Hedgcock v. People ex rel.,* 91 Colo. 155, 13 P. (2d) 264, decided subsequent to that ordinance, are said to affirm the rule thereunder.

█ The board of adjustment may not properly challenge the validity of that provision of the charter. It is elementary that the constitutionality of an act may be

attacked only by one whose rights are infringed thereby, and that the duty of determining validity rests, not upon the executive officials, but upon the courts. The position of a public official *sua sponte* challenging the validity of an act regulating his authority is not sustainable and, insofar as the board of adjustment is concerned, further ground for reversal of the judgment here involved need not be sought. As to defendant in error Rotola, the question of the validity of the ordinance provision is properly raised.

Turning to the cases relied on, *Curran Co. v. Denver, supra,* involved appeal from conviction for violating an ordinance prohibiting the erection of billboards within a prescribed distance from a street or alley, or of more than prescribed dimensions, and further providing in a separate section that no application for a license to erect a billboard should be considered until the written consent of the adjoining lot owners and residents directly opposite such proposed billboard should be obtained. This ordinance, enacted in 1898, far antedated statutory or charter authority for a zoning ordinance. Conviction was based on violation of section 592 of the ordinance, which restricted the location and size of billboards. The provision as to consent of adjoining lot owners was in no way involved. The question of wrongful delegation of authority was not raised, either in briefs or assignments of error. As appears from the opinion, the ordinance was held void as an unwarranted invasion of private rights having no relation to public health or safety. Thereafter the statement appears in the opinion, "Nor can the governing body of a municipality commit the exercise of its legislative discretion to property owners, or other private persons." This is clearly dictum. In fact, the rule so announced in the Curran case militates equally against the constitutionality of the authority of the board of adjustment to permit nonconforming uses without the consents of the required percentage of owners, for it continues: "Neither

can the city entrust such power to the caprice of any of its officers, nor can it reserve to itself in its administrative, rather than its legislative capacity, an absolute or despotic power to grant or refuse permits of the character in question in particular cases, and in the absence of, or without reference to, prescribed and duly enacted rules and regulations." Thereunder the city could not entrust to a board of adjustment the absolute power to grant or refuse a permit "in the absence of, or without reference to, prescribed and duly enacted rules and regulations."

*Willison v. Cooke, supra,* also was an attack upon an ordinance, enacted long prior to the existence of any authority for a zoning ordinance, whereunder it was declared unlawful for the owner of property to erect a store building unless there were first secured the signatures of a majority of the owners within a specified area, and whereunder, also, a building permit should not issue without agreement in writing by the owner to build back from the front line of the lot the distance as required by the ordinance. We there held that a store building was in no sense a menace to health, comfort, safety or general welfare, whether it stood upon the rear portion of the lots or was constructed to the line of the street; that even if its construction did threaten harm to others, objection thereto would in no sense be removed by the consent to its construction by the majority of the owners of property as required by the ordinance; that the restrictions in the ordinance had no relation to the health, safety or general welfare, and therefore deprived the owner of his constitutional right to the use of his property. Therein was no adjudication of the issue of delegation of authority, as here raised. *Menzel v. Niles Co., supra,* arose out of the identical ordinance considered in the Willison case, and the other cases referred to in the brief of defendants in error do not consider the issue before us.

■ However, we do not challenge the rule declared

in the Curran Co. and Willison cases. In the absence of a zoning ordinance, where the right of a municipality is strictly limited to the general police power for protection of the public health and welfare, it is commonly held that only such buildings and occupations may be restricted as are shown to be injurious under such police power; that individuals ought not to be entrusted with the guardianship of their own health, safety or social well-being through authority to waive laws or ordinances made for their protection, nor should one individual be permitted to dictate the use of another's property. *City of Utica v. Hanna,* 202 App. Div. 610, 195 N. Y. Supp. 225; *McCown v. Gose,* 244 Ky. 402, 51 S.W. (2d) 251; *Willis v. Town of Woodruff,* 200 S. C. 266, 20 S.E. (2d) 699, and cases cited in *Curran Co. v. Denver, supra.* In the absence of zoning ordinances, restrictions as to use of property are viewed with hostility by the courts.

However, as well stated in *City of Des Moines v. Manhattan Oil Co.,* 193 Iowa 1096, 184 N.W. 823: "With the changing conditions necessarily attendant upon the growth and density of population, and the ceaseless changes taking place in method and manner of carrying on the multiplying lines of human industry, the demand becomes greater upon that reserve element of sovereignty which we call the police power, for such reasonable supervision and regulation as the state may impose, to insure observance by the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others." With the growth of congested urban populations, containing areas of attractive residential development, with values greatly dependent on conformity, and with the increasing public concern for quiet, safety and beauty, there have been enacted zoning laws under appropriate legislative or constitutional authority in most municipalities in the United States and in many rural areas. The concept of public welfare thereunder has broadened. Under such

ordinances uses permitted and legal in one district of the city are prohibited in another. Such prohibition is based not strictly upon the inherent danger to the public health, public morals, the public safety, or the public welfare of the prohibited use generally, but upon its interference with the appropriate use of property and the maintenance of its value in the zone in which such use is sought. We have repeatedly upheld such restrictions. So in *Flinn v. Treadwell*, 120 Colo. 117, 207 P. (2d) 967, we held valid a provision requiring in a "B" residential district a front yard of not less than twenty-five feet in depth, directly contrary to the old ruling in *Willison v. Cooke, supra.*

Also, with the growth and change of cities, inevitably there come changing use and demand. Areas once residential are found to be in the path of necessary business or other changing use. Properties at the edge of a residential district may, by virtue of change in an adjoining district, necessarily require conversion to nonconforming uses. Failure of adjustment may destroy the value and prevent the proper use which the zoning laws seek to protect. Often such adjustments can be provided for only by granting permission for nonconforming use. Boards of adjustment are created for such purpose. The primary reason for such changing use being the needs and desires of the vicinity, it is a reasonable requirement and primary test of changed condition that the consent of those affected be required before the zoning board may act. Thereby the owner of one property is not dictating the use of his neighbor's property, for the discretion in permitting change of use still lies with the board, yet the board cannot act arbitrarily, but only in cases where the demonstrated need and desire of the community for change so affirmatively appears.

Such situation developed early in New York when inhabitants of some large residential districts, where commercial · garages were prohibited, could not obtain storage places for their automobiles. To supply that

need, it was provided that in any district the board of appeals had discretion to grant application for the erection of a public garage upon filing the consents of the owners of 80 per cent of the street frontage within the district determined by the board of appeals to be affected by it. Such provisions have been held valid and action of the board without compliance void. *Hacker v. Board of Appeals,* 223 App. Div. 196, 227 N. Y. Supp. 627; *Application of Dolat,* 75 N. Y. Supp. (2d) 862. In *Stalb v. Davidson,* 260 App. Div. 1020, 23 N. Y. Supp. (2d) 729, the court went so far as to annul a permit to erect a filling station in a business "B" district, upon the ground that in determining the extent of the area which would be affected by its erection, and from whose owners consents must be obtained, the board acted arbitrarily and unreasonably. This method of limitation on the action of adjustment boards has been widely followed in other cities (Bassett, Zoning, page 126), and has generally been held valid. The question of validity has apparently not heretofore been raised in this jurisdiction.

A line of distinction between such an ordinance and an invalid delegation of authority was laid down by the United States Supreme Court in *Eubank v. Richmond,* 226 U. S. 137, 33 Sup. Ct. 76, 57 L. Ed. 156, and *Cusack Co. v. City of Chicago,* 242 U. S. 526, 37 Sup. Ct. 190, 61 L. Ed. 472. The former case involved an ordinance providing, "That whenever the owners of two-thirds of the property abutting on any street shall, in writing, request the committee on streets to establish a building line on the side of the square on which their property fronts, the said committee shall establish such line," etc. This ordinance was held void for the reason that it left no discretion in the committee as to whether the street line should or should not be established; but delegated full authority to two-thirds of the property owners; that thereby part of the owners fronting on a block determined the extent and kind of use that other owners

should make of their lots, and there was no standard by which the power thus given was to be exercised. In the latter case, the involved ordinance required that before any billboard above the size specified might be erected in any block in which one-half of the buildings were used exclusively for residence purposes, the owners of a majority of the frontage of the property on both sides of the street in such block should consent in writing thereto. This ordinance was held valid. The court said that the contention that it constituted a delegation of power to the majority property owners was palpably frivolous, and with reference to *Eubank v. Richmond, supra,* declared: "A sufficient distinction between the ordinance there considered and the one at bar is plain. The former left the establishment of the building line untouched until the lot owners should act and then made the street committee the mere automatic register of that action and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one-half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."

*Washington ex rel. v. Roberge,* 278 U. S. 116, 49 Sup. Ct. 50, 73 L. Ed. 210, 86 A.L.R. 654, further emphasized the distinction. The zoning ordinance there involved was amended by adding: "A philanthropic home for children or for old people shall be permitted in First Residence District when the written consent shall have been obtained of the owners of two-thirds of the property within four hundred (400) feet of the proposed building." The grant of permission for such building

and use was not left in the discretion of the board upon consent of the required percentage of owners, as in the Cusack case, but was made mandatory upon such consent, and showed, as the court said, "that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and with the general scope and plan of the zoning ordinance."

The distinction is noted in *Downey v. City of Sioux City*, 208 Iowa 1273, 227 N.W. 125, where the court said:

"Generally speaking, it has been held that regulations or ordinances requiring the consent of property owners, or a percentage thereof, in the vicinity for the erection or use of particular kinds of buildings are invalid, on the ground that such is a delegation of governmental power to private citizens * * *.

"However, a distinction is to be kept in mind in matters of this kind between an ordinance which leaves the enactment of law to individuals, and an ordinance prohibitory in character. The prohibition may be modified with the consent of the persons most affected by such modification; hence an ordinance is not invalid by reason of a provision that buildings may be erected or used for particular purposes if the consent of a part or all of the property owners in the vicinity is obtained."

In *Smolensky v. City of Chicago*, 282 Ill. 131, 118 N.E. 410, an ordinance requiring consent of majority of owners of frontage in the block for establishing a junk shop was held valid, and in *Spies v. Board of Appeals*, 337 Ill. 507, 169 N.E. 220, the court said: "We have in numerous cases sustained ordinances requiring the consent of owners of property to the construction and maintenance, within a certain distance of their property, of buildings and structures of certain kinds or for certain purposes, or the establishment and conduct of certain kinds of business or occupation. These have been cases which involved a structure, business, trade, or occupation properly subject to the exercise of the police power, as, for

instance, livery stables, saloons, garages, and bill-boards."

In this jurisdiction we do not so restrict the police power (*Flinn v. Treadwell, supra*), but a filling station, for which permit is here sought, would be subject to restriction even under the Illinois rule. *Starkey v. City of Longmont,* 91 Colo. 387, 15 P. (2d) 620. The Louisiana Supreme Court, in *State ex rel. v. Harris,* 158 La. 974, 105 So. 33, sustained the validity of an ordinance making it unlawful to erect any business buildings within residence districts, except, upon presenting to the building inspector a petition signed by not less than fifty-five per cent of the property owners actually residing on the street where the building is sought to be erected. The contention that this was an illegal delegation of powers was denied under authority of the Cusack case.

In *City of Stockton v. Frisbie & Latta,* 93 Cal. App. 277, 270 Pac. 270, the court construed a challenged ordinance as vesting in the council the discretion of determining whether a permit for nonconforming use should be granted upon the filing of written consents of property owners as there required, and held the ordinance and consent provision valid. Many cases are cited and reviewed in the opinion. In *State ex rel. v. Combs,* 129 Ohio St. 251, 194 N.E. 875, an ordinance requiring written consents of fifty-one per cent of the property owners in a residential district within a radius of 600 feet from a filling station as a prerequisite to its installation was held not a delegation of legislative power conferred upon the property owners and such provision not repugnant to the state or federal constitution. Therein the court noted the distinction made in the Cusack case, and quoted from *Cincinnati, W. & Z. Rd. Co. v. Com'rs of Clinton County,* 1 Ohio St., 77: "The law is therefore, perfect, final, and decisive in all its parts, and the discretion given only relates to its execution. It may be employed or not employed — if employed, it rules throughout; if not employed it still remains the law,

ready to be applied whenever the preliminary condition is performed. The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made."

*Myers v. Fortunato*, 12 Del. Ch. 374, 110 Atl. 847, involved an ordinance prohibiting the erection of a public garage in a residential district within forty feet of the building line of adjoining property owners unless with their written consent. This provision for consent was held valid and not a delegation of legislative power. The court said:

"The law is complete in itself wholly independent of what any one may do or say, but if those whom the law was designed to protect consent that the thing prohibited may be done in a particular case, the prohibition is modified to that extent. The validity of the law does not depend on the acts of such persons, and is entirely unlike those ordinances that are not effective until the property owners act, as in the building line case, and whose acts alone give to the ordinance the force and effect of law.

"If the existence of the law depends upon the vote or act of the people it is an unconstitutional delegation of legislative power, but if the law is complete in and of itself the fact that it provides for the removal or modification of its prohibition by the act of those most affected thereby, does not make it a delegation of legislative power. Such is the test recognized by the courts in many well considered cases, and by the Chancellor and law judges of this state in a recent opinion given to the Governor in respect to the constitutionality of the 'School Code.' "

In *Inspector of Buildings of Lowell v. Stoklosa*, 250 Mass. 52, 145 N.E. 262, attack was made on the provision

of a zoning ordinance that no building in a residence district could be erected or altered for purposes of business or industry unless upon application accompanied by written consents of owners of not less than three-fourths of all lands used for other than business or industrial purposes within a specified area. This was held valid. The court said, after referring to the Cusack case: "The consent of certain landowners required by the present ordinance is merely a condition precedent to the exercise of power by the city council to hold a public hearing upon an application to permit a building within a residence district to be used for business or industrial purposes and to decide whether to order or to refuse the issuance of such a permit. This is the establishment of a safeguard for the owners of homes within residential districts. It is not a delegation of legislative power."

*Cady v. City of Detroit,* 289 Mich. 499, 286 N.W. 805, was an attack upon an ordinance relating to the maintenance of automobile trailer camps. The court said, citing the Cusack case: "Regarding the complaint that the requirement of consent of 65 per cent. of property owners within 600 feet of such camp must be secured before a license can be granted is unreasonable, we are constrained to hold that such conditions are valid and do not result in the delegation of a legislative power by the city to such adjacent property owners. * * * If such consent is used for no greater purpose than to waive a restriction which the legislative authority itself has created and in which creation it has made provision for waiver, such consent is generally regarded as being within constitutional limitations." *Leighton v. City of Minneapolis,* 16 Fed. Supp. 101 (Minnesota), and *City of Muskogee v. Morton,* 128 Okla. 17, 261 Pac. 183, hold similar consent provisions valid, and the former opinion gives a careful discussion of authorities.

■ In view of the importance of the question involved, the voluntary construction of the ordinance by the board of adjustment and the unfortunate situation

of any who may have acted in reliance on a void permit of the board, we have discussed the authorities on this question at some length. It appears therefrom that the ordinance provision here involved is valid by overwhelming weight of authority and we think also in reason and by test of practical result.

While no separate point is made in the argument, counsel quote from *Hedgcock v. People ex rel.*, 91 Colo. 155, 13 P. (2d) 264, and from *Hedgcock v. People ex rel.*, 98 Colo. 522, 57 P. (2d) 891, from which we infer a contention that the action of the board of adjustment should be sustained on the ground that the property here involved was improperly classified and that the classification was therefore arbitrary and oppressive. Both those cases involve action for mandamus presenting that issue to the court and in no way concern the issue here raised of the right of the board of adjustment to permit nonconforming uses in the absence of the consents required by the ordinance.

 Under the Denver zoning ordinance, the board of adjustment has no authority arbitrarily to permit exceptions to the provisions of the ordinance. The charter amendment provides (219A, Paragraph G) that the council may adopt regulations and restrictions pursuant to the authority of the zoning amendment and that it may provide that the board of adjustment may make special exceptions to the terms of the ordinance, but such exceptions may be made only, (1) in appropriate cases; (2) subject to appropriate conditions and safeguards; (3) in harmony with the general purpose and intent of the ordinance and; (4) in accordance with general or specific rules contained in the ordinance. The rules under which such exceptions may be made are contained in section 2190 B. The power of the board is limited by those rules and any exception made without compliance with those rules is beyond the authority of the board and void. In the case before us the ordinance specifically limits the authority of the board to permit

a nonconforming use such as here sought. Before such change may be authorized, the board must determine the area which will be specially affected by such proposed use or structure, and must have on file the consents duly signed and acknowledged of the owners of 80 per cent of all the land within such area. Compliance with those provisions of the ordinance is jurisdictional and the attempted action of the board without such compliance was void.

The judgment of the trial court is reversed.

MR. JUSTICE HOLLAND dissents.