## No. 11,505.

COLBY, ET AL. *v.* BOARD OF ADJUSTMENT OF DENVER, ET AL.

Decided April 18, 1927.

Certiorari against a municipal board of adjustment. Judgment for respondents.

## *Affirmed.*

1. CONSTITUTIONAL LAW—*Municipal Corporations—Zoning Ordinance.* A municipal zoning ordinance dividing the city into districts for residential, business, commercial and industrial purposes held constitutional, and not discriminatory.

2. MUNICIPAL CORPORATIONS—*Zoning Ordinance.* Municipal power to enact zoning ordinances must not be exercised so arbitrarily or unreasonably as to make the ordinance unconstitutional in its operation and effect.

3. *Legislation—Judicial Review.* Municipal legislation and its application to particular facts are subject to judicial review.

4. *Zoning Ordinances.* Zoning ordinances have a wider scope than mere suppression of offensive uses of property, and act not only negatively, but affirmatively for the promotion of the public welfare.

5. *Zoning Ordinances.* Applicants for a permit to operate a brick plant within the limits of a city held, under the facts disclosed, to have purchased property and equipment therefor in contemplation of a forthcoming zoning ordinance.

6. CONSTITUTIONAL LAW—*Police Power.* A vested interest on the ground of conditions once obtained cannot be asserted against the proper exercise of the police power.

7. *Police Power.* Exercise of police power extends to so dealing with conditions when they arise as to promote the general welfare of the people.

8. NUISANCE—*Brick Yard.* Operation of a brick yard in the residential district of a city would be a nuisance in fact and law, due to the offensive effects of its operation.

9. COURTS—*Stare Decisis.* The application of old rules to new conditions or changed facts of modern life does not offend the rule of stare decisis.

(

10. APPEAL AND ERROR—*Ordinance—Construction*. In construing a municipal zoning ordinance, the reviewing court limits itself to the facts in the particular case under consideration.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Messrs. PERSHING, NYE, TALLMADGE & BOSWORTH, Mr. LEWIS A. DICK, Mr. JOHN PERSHING, for plaintiffs in error.

Mr. HENRY E. MAY, Mr. THOMAS H. GIBSON, for defendants in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

PLAINTIFFS in error, petitioners below, brought certiorari in the district court against the board of adjustment, created by a Denver municipal ordinance, and against the members of the board. Respondents had judgment and petitioners bring the case here for review.

The suit involves a comprehensive building zone ordinance. The city building inspector denied the application of Colby and his brother, copartners, for a permit to operate a brickmaking plant on some five acres of petitioners' land lying within the confines of a residence district zone in Denver. The Colbys appealed to the board of adjustment, pursuant to ordinance. The board, after listening to petitioners and certain protestants, confirmed the inspector's refusal, and said: "Whereas, the public convenience and welfare will not be substantially served and the appropriate use of neighboring property will be substantially and permanently injured, be it resolved by the board of adjustment that the application be and is hereby denied and that the chief building inspector be so notified." This was done. The proceed-

ings in certiorari against the board and its members were to review their action in denying relief to petitioners. The trial court heard the case de novo and upon consideration of the merits, sustained the board. We are now considering petitioners' assignments of error involving above.

Denver is a home rule city operating under the Twentieth Amendment to the state Constitution. Pursuant thereto, on May 15, 1925, the citizens of Denver voted in favor of charter amendment section 219-A which empowers the city council to pass a comprehensive zoning ordinance. The first three sections of the amendment outline its general purpose and character. They read:

"Section 1. Grant of Power. For the purpose of promoting health, safety, morals or the general welfare of the community, the Council of the City and County of Denver is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

"Section 2. Districts. For any or all of said purposes, the Council may divide the City and County of Denver into districts of such manner, shape and area as may be deemed best suited to carry out the purposes of this Amendment; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts.

"Section 3. Purposes in View. Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote

health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provisions of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the City and County of Denver.''

A zoning commission was created by the amendment and appointed by the city council. Its functions were to recommend the original boundaries of zoning districts and appropriate regulations to be enforced therein. It did so, after extended study and various hearings; it reported to the council in the form of a proposed ordinance, accompanied by maps ''showing the location, present use and area of lot occupancy of all buildings in the city, and also other data, such as assessed valuation, population density, trend and rate of growth of the city, present and future car lines and principal traffic streets.'' The city gave public notice of the proposed ordinance; several sessions were had at which parties in interest and citizens were heard, and on February 9, 1925, the ordinance in its main features as recommended by the commission was adopted. It was duly published and has been in force ever since without modification as to any matter here involved.

The board of adjustment is committed with important duties and is vested with wide discretionary powers. It hears appeals from the decisions of administrative officials in the enforcement of the charter amendment, or of any ordinance adopted pursuant thereto. It may ''in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinance in harmony with its general purpose and

intent and in accordance with general or specific rules therein contained.''

The zoning ordinance separates district uses into four classes, to wit: (1) Residential, (2) business, (3) commercial and (4) industrial purposes. Petitioners' property is within a zone known as ''Residence B'' district. The establishment of a brick making plant is not permitted in such district. Another brick yard has been in operation close by for many years, from which large deposits of clay have been removed and the supply is still unexhausted. The ordinance makes provision as to the use of property existing at the time of the passage of the ordinance, and how the board of adjustment may, under certain conditions, permit the continuance of such. The old brick plant is said to be about 25 years old. The board may also, under section 24 B (4) of the ordinance, grant in undeveloped sections of the city temporary and conditional permits for not more than five year periods for any structure or use.

In October, 1924, after the adoption of the charter amendment, but before the passage of the zoning ordinance, petitioners bought their five acres above mentioned. It contains valuable clay deposits, suitable for the making of brick, and the land was acquired by petitioners for the purpose of manufacturing brick on the premises. In January, 1925, petitioners made a contract for $5,000 worth of machinery and equipment. They relied upon statements of two men, presumably employes in the office of the building inspector, that no permit would be required of them and to go ahead with the work, which they testify they did. They had also read in a local newspaper that the forthcoming ordinance would not apply to works under construction before its passage. Petitioners had no permit, but on June 8, 1925, they applied for one, which was denied and the order was appealed from as above stated.

In addition to the above facts, the testimony shows that the territory in question is in a residence district

with splendid possibilities; a new school house has been recently built three or four blocks distant from the Colby yard and is in use; the growth of the city trends in the direction of the district; it is the extension of a highly desirable residential section, but its growth is retarded and land values in the neighborhood of the old brickyard have been so destroyed by its presence as to result in many unredeemed tax sales; the smell, smoke and dirt arising from the brick kilns are injurious and unhealthful to the inhabitants; citizens have protested against the granting of the permit; the brickyard is not merely a nuisance there, but a menace, and another brick yard will make the situation correspondingly worse, dangerous to the safety, health and welfare of school children and adult residents as long as it exists. The evidence as to above, while contradicted in part, is clear.

1. When this case was brought, there was a great variety of opinion among state courts as to the validity of general zoning ordinances under the due process clause, U. S. Amendment 14, but recently the Supreme Court of the United States has set the matter at rest and declared them constitutional. *Village of Euclid v. Ambler Realty Co.* (U. S.), 47 S. C. Rep. 114. This instructive decision is wide in its scope; it collates the authorities, and reaches its conclusion after thorough and exhaustive reasoning. It is applicable to the Denver charter amendment and the comprehensive zoning ordinance thereby authorized. It dispels doubt, and chooses a rule that the highest court deems most fitting to modern, progressive, urban life. It relieves us of the necessity of self-determination in a question of first impression here. We shall permit ourselves to follow the Euclid decision, supra, without analyzing the conflicting cases that went before, and without extensive quotations from the opinion. To do it justice, we should have to quote it all.

2. Counsel for petitioners do not wish to be understood as contending generally against comprehensive zoning ordinances, but only in its application here; that

is, they say that the power must not be exercised so arbitrarily or unreasonably as to make the ordinance unconstitutional in its operation and effect. This abstract statement of law may be conceded. Such was the purport of our ruling in *Averch v. Denver,* 78 Colo. 246, 249, 242 Pac. 47. The principle is also approved in *Village of Euclid v. Ambler Realty Co., supra; Village of Terrace Park v. Errett,* 12 Fed. (2d) 240; *Welch v. Swasey,* 214 U. S. 91, 29 Sup. Ct. 567, 53 L. Ed. 923; *Hadacheck v. Los Angeles,* 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917 B 927; and many other cases. Municipal legislation and its application to particular facts are subject to judicial review. In the case last named, it is said on page 410 of the opinion, that the principle is familiar that the police power of a state cannot be arbitrarily exercised, but in any given case it must plainly appear to apply. It does not so appear in the case before us. The Euclid case also so holds. The facts in the Los Angeles case, supra, are in many respects like those before us; in some ways they are even stronger against petitioners' contention here. There, it involved a brick yard in operation before the territory was taken into the corporate limits; here, there is no claim that petitioners owned it before, if this be supposed to differentiate it; there was another brick yard operating in the proscribed district in Los Angeles, as in Denver, but the fact was not controlling on the court, for the reasons there explained. It was shown here that a bad condition would be made worse by a duplication of the nuisance, if the petition were granted. The rights of the other yard are not in issue here. The apparent prospective deprivation to the owner for brickyard purposes in Los Angeles was said to be about $800,000 less about $60,000, its residential value. The amount is tremendously in excess of the loss claimed here, but it was not there allowed to outweigh the welfare of the whole community. As to *Hadacheck v. Los Angeles, supra,* and *Village of Euclid v. Ambler, supra,* we must deny ourselves copious quotations from the

opinions, and suggest that they both be examined for the reasons advanced in support of these two decisions of the Supreme Court of the United States. We are following these precedents. The ordinance was not discriminatory. "It affects all of a class upon a reasonable classification." *Averch v. Denver, supra; State v. City of New Orleans,* 154 La. 271, 97 So. 440, 33 A. L. R. 260.

3. Petitioners offered in evidence photographs of the site of the proposed brick plant and the surrounding territory, portraying its desolate and uninviting character for residential purposes. They show that counsel's representations as to such present conditions are not overdrawn. A full perspective, however, in a case like this, requires not merely that the present be depicted, but that the future be envisaged. "There must be progress, and if in its march private interests are in the way they must yield to the good of the community." *Hadacheck v. Los Angeles, supra.* (239 U. S. 394, 410). The photographs but emphasize a condition to be bettered; they fail to X-ray the fact that the chief contributor to such conditions is the presence of the old brickyard there, and that another would tend to perpetuate the unhealthful menace to the community. The evidence shows that experience has demonstrated that other localities within the city, at one time no more promising than those surrounding the brickyard, are now exclusive residential districts, occupied with beautiful and costly homes. It was held in *Miller v. Board of Public Works,* 195 Cal. 477, 234 Pac. 381, 38 A. L. R. 1479, to which we agree, that zoning ordinances have a much wider scope than mere suppression of offensive uses of property, and act not only negatively, but affirmatively for the promotion of the public welfare.

4. Petitioners are scarcely in a position to say that they were blinded, or that they did not make their purchases of property or equipment, or install the same, in contemplation of the forthcoming zoning ordinance. The charter amendment had passed; the' zoning commission

was at work with the proposed ordinance, drafting maps and blueprints; there were public hearings. Their own testimony that they read in the newspapers about it had an evidential significance that perhaps they did not fully realize; namely, their knowledge of conditions then existing and that they might be denied a permit. They testify that the newspaper article asserted that the proposed ordinance would not apply to them if their work had begun prior to its passage, but the newspaper prophecy did not alter any legal status, nor was it changed by misinformation obtained from clerks or employes in the building inspector's office as to the law or municipal requirements.

5. Petitioners claim that the decision of the board destroys prior vested rights, but a vested interest on the ground of conditions once obtained cannot be asserted against the proper exercise of the police power— to so hold would preclude development. *Hadacheck v. Los Angeles, supra.* The exercise of the police power extends to so dealing with conditions when they arise as to promote the general welfare of the people. *Wulfshon v. Burden,* 241 N. Y. 289, 150 N. E. 120, 43 A. L. R. 651. Counsel for petitioners quote the Bill of Rights, Colo. Const. art. II, secs. 3 and 15, but we find no constitutional right invaded here.

6. Counsel for petitioners are wrong in their belief that the judgment of the trial court presupposes a holding that brickyards constitute a nuisance per se. As said by Mr. Justice Sutherland in the Euclid case, supra, a nuisance may be merely a right thing in the wrong place. As in *Hadacheck v. Los Angeles, supra,* the evidence causes us to remark that if the yard be permitted where the Colbys want it, it would be a nuisance in fact and law, due to the offensive effects of its operation. The question of removal of deposits of clay to be molded into brick elsewhere, is not in issue.

7. The justice writing the opinion in *Village of Euclid v. Ambler Realty Co., supra,* remarks on the decided

trend of opinion toward a broader view of zoning ordinances, and refers to state courts reversing themselves, citing instances. Even so, we do not apprehend that we are now offending the rule of stare decisis, as applied to any of our previous decisions. We are only applying old principles to new conditions, or to the changed facts of modern life. Thus, a horse and buggy day decision in the livery stable case, *Phillips v. City of Denver*, 19 Colo. 179, 34 Pac. 902, intimately allied with those times, would be incongruous now if not considered in the light of modern industrial and civic development. It would be applying the law to an obsolete situation. The same may be said of brickyards in a residence zone under the state of this record.

8. This decision is not to be construed as passing upon or approving each and every provision of the Denver zoning ordinance, nor as fixing its application to every circumstance that may arise. We limit ourselves to the facts before us, and observe the caution that obtains in the Euclid case, supra, wherein it is said: ''It is enough for us to determine, as we do, that the ordinance in its general scope and dominant features, as far as its provisions are here involved, is a valid exercise of authority, leaving other provisions to be dealt with as cases may arise directly involving them.''

We do not find that the board of adjustment in denying either a temporary or permanent permit to petitioners acted capriciously, arbitrarily or in excess of its powers. On the contrary, it appears that due consideration was given to the rights of all.

Judgment affirmed.