600 P.2d 103 (1979)
TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., a Colorado Corporation, Plaintiff-Appellee,
v.
The BOARD OF COUNTY COMMISSIONERS OF LINCOLN COUNTY, Colorado, and Rex Clark, Robert P. Buzzell and Roland Meinzer, the Individual members of said Board, Defendants-Appellants, and
Colorado Land Use Commission, Intervenor-Amicus Curiae.
No. 78-232.
Colorado Court of Appeals, Div. III.
May 24, 1979.
Rehearing Denied June 21, 1979.
Certiorari Denied September 4, 1979.
*104 Robert T. James, Colorado Springs, for plaintiff-appellee.
George J. Francis, Denver, Frank Safranek, Limon, for defendant-appellant Board of County Commissioners of Lincoln County, Colorado.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James L. Kurtz-Phelan, Asst. Atty. Gen., Denver, for intervenor-amicus curiae Colorado Land Use Commission.
STERNBERG, Judge.
The issue in this appeal is whether the Board of County Commissioners of Lincoln County is estopped from denying a permit to construct a power line to plaintiff Tri-State Generation and Transmission Association, Inc. Tri-State contends that the Board's action is unconstitutionally retrospective, confiscatory, and an abuse of discretion. We disagree, and therefore reverse the judgment of the district court which overturned the action of the Board.
In 1973, Tri-State, a wholesale supplier to electrical cooperatives, commenced planning for a power line to be constructed in both Lincoln and Kit Carson counties. Tri-State did engineering and ecological studies, purchased several rights-of-way in Lincoln County at nominal cost, and communicated its plans to the public by notice and at public meetings. On March 1, 1976, construction began on the portion of the line in adjacent Kit Carson County.
However, on March 8, 1976, the Board of County Commissioners of Lincoln County passed a resolution designating the site selection and construction of public utilities as an "area or activity of state interest" pursuant to § 24-65.1-101, et seq., C.R.S.1973 (1978 Cum.Supp.). Under this statute, Tri-State could not construct any portion of the line in Lincoln County without first receiving a permit from the Board. The Board adopted statutorily required regulations, and Tri-State applied for a permit to construct the line along a proposed corridor north of Interstate 70. After several public hearings, the Board denied the permit.
The Board reasoned that the area north of I-70 is primarily devoted to wheat farming, while that south of I-70 is grassland, and that because of numerous adverse effects on farming caused by the presence of the line and support structures in the wheat fields, it would be "less undesirable" to put the line over grassland rather than farmland.
Tri-State sought review under C.R.C.P. 106(a)(4) and the district court reversed, holding that the statute, § 24-65.1-101, et seq., C.R.S.1973 (1978 Cum.Supp.), was on its face constitutional, but that the prior purchase by Tri-State of several easements for the northern corridor established a vested property right which deprived the Board of the power to act, and that the application of the Board's regulations in this case was therefore unconstitutionally retrospective, confiscatory, and an abuse of discretion.
It is axiomatic that every exercise of the police power applying land use regulations is apt to affect adversely someone's property interests and that a reviewing court should intervene only when such power is exercised capriciously and arbitrarily. The standard for determining the validity of land use regulation was set forth in the seminal zoning case, Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), and followed in Colby v. Board of Adjustment, 81 Colo. 344, 255 P. 443 (1927). The exercise of the police power, be it in the enactment of land use controls, or as here, in decisions enforcing those regulations, must bear a rational relationship to the health, safety, and welfare of the community. In this case the Board's reasons for denying the permit comply with this standard. They are supported by competent evidence, and thus must be upheld. See Ford Leasing Development Co. v. Board of County Commissioners, 186 Colo. 418, 528 P.2d 237 (1974); Bird v. Colorado Springs, 176 Colo. 32, 489 P.2d 324 (1971).
Even though Tri-State spent money on preparatory studies and in acquiring *105 easements, which it argues now are useless because of the Board's actions, the Board is not estopped thereby from applying its newly adopted regulations to Tri-State.
The applicable principle is stated in 1 R. Anderson, The American Law of Zoning § 6.22 (1976):
"A use which is planned rather than actually commenced prior to the enactment of a restrictive ordinance is not an existing use which is entitled to continue.... In determining whether a landowner had an existing use prior to enactment of a restrictive ordinance, preparation for use is not equal to actual use."
To reach a contrary result here would establish a roadblock to effective land use regulation. Logically extended it would mean that developers, by spending money on planning, could thereby prevent application of future land use controls to their land. See Crittenden v. Hasser, Colo.App., 585 P.2d 928 (1978).
The analysis in Colby v. Board of Adjustment, supra, is persuasive. There the court held that the petitioners, who had purchased property containing valuable clay deposits and had spent $5,000 in preparing to construct a brickyard thereon, but, as here, had not actually begun the construction before the adoption of a zoning ordinance restricting that use, did not have a right to proceed contrary to the newly enacted ordinance.
As the Colby court stated:
"Petitioners claim that the decision of the board destroys prior vested rights, but a vested interest on the ground of conditions once obtained cannot be asserted against the proper exercise of the police power .... The exercise of the police power extends to so dealing with conditions when they arise as to promote the general welfare of the people."
Even though Tri-State asserts that it spent a sizeable sum of money for preliminary studies, no construction on the line had begun in Lincoln County.
Nor did the Board abuse its discretion, as Tri-State contends, by denying Tri-State the right to submit evidence concerning the feasibility of alternate routes. Tri-State bases this argument on a provision in the Board's regulations which states that a permit will not be approved unless certain criteria are met, one of which is that all reasonable alternatives have been assessed.
Tri-State makes too much of this provision by interpreting it to mean that an applicant for a permit must be allowed to present a case for all reasonable routes. The basic issue before the Board was the permit for the northern route and Tri-State presented its case in that regard. A perusal of the record reveals there was testimony concerning the desirability of placing the line over grassland rather than farmland, and it was on that preference that the Board based its denial. Thus, we find no abuse of discretion in the Board's refusal to allow Tri-State to present a case for another route.
Tri-State's other contentions of error are without merit.
The judgment is reversed and the cause remanded with directions to dismiss the complaint.
PIERCE and SMITH, JJ., concur.