George M. WILKINSON and Fidelity Trust Building, Inc., an Idaho corporation, Plaintiffs–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, Colorado, Defendant–Appellee.

No. 91CA1780.

Colorado Court of Appeals, Div. III.

Sept. 9, 1993.

Rehearing Denied Oct. 21, 1993.

Certiorari Denied May 16, 1994.

Ray Lee Wall, Boulder, for plaintiffs-appellants.

Timothy E. Whitsitt, Aspen, for defendant-appellee.

Opinion by Judge JONES.

Plaintiffs, G.M. Wilkinson and Fidelity Trust Building, Inc., appeal the trial court's judgments and orders affirming the decisions of the defendant, the Board of County Commissioners of Pitkin County (Board), which denied several of plaintiffs' applications to develop land located near the city of Aspen. In addition, plaintiffs appeal the trial court's dismissal of several of their claims, its summary judgment entered in favor of the Board, and its order of preliminary injunction and order and judgment of contempt citing one of the plaintiffs with violation of its preliminary injunction. We affirm.

The land at issue consists of 29 mining claims totaling approximately 184 acres that were patented in the 1890's and that are located on Smuggler Mountain in unincorporated Pitkin County. In 1985, plaintiffs acquired options to purchase the properties and thereafter acquired title to all of the properties at issue in May 1987.

The Board determined that, for purposes of plaintiffs' proposed development of the properties, the land containing 15 mining claims, comprising approximately 113 acres, merged together into a single parcel designated as Parcel A and the land on which lay 14 mining claims, comprising approximately 71 acres, merged into a single parcel designated as Parcel B.

In April 1988, plaintiffs filed two separate applications with Pitkin County for development approvals on the two adjacent designated parcels A and B. These applications requested approval of multiple unit development on each parcel pursuant to the county's Low Impact Subdivision (LIS) process, which is a procedure for exemption from both the full subdivision approval process and from

the county's Growth Management Quota System (GMQS) process.

The GMQS requires new subdivision applications to compete for a limited number of available new building rights allocated each year by the county. GMQS applications are scrutinized for compliance with the full set of subdivision regulations and compete with other subdivision applications for the available allocated building rights.

After an initial vote of denial by the Board, plaintiffs were permitted to submit amended applications pursuant to the same LIS exemption process for approval of three free market units on Parcel A and for General Submission approval of a single residence on Parcel B. According to the Pitkin County Land Use Code (PCLUC), General Submission approval is the sole approval required by the Board for development of a residential unit which is entitled to a GMQS exemption. *See* PCLUC § 5–510.1, et seq. Both of plaintiffs' amended applications were rejected by the Board in December 1988, as reflected in the Board's formal resolutions of January 1989.

Prior to its decisions on the merits of plaintiffs' complaint, the trial court entered a temporary restraining order and preliminary injunctions prohibiting plaintiffs from doing further improvement or construction work on the road or the properties. An order of contempt was subsequently entered in May 1991, which required plaintiffs to demolish the structures they had proceeded to construct in violation of the injunctive orders. Plaintiffs' motion to stay enforcement of the contempt order was denied.

The trial court dismissed several of plaintiffs' claims with prejudice, including plaintiffs' claim that their patented mining lots are exempt from county subdivision regulation; plaintiffs' claim that the county is statutorily barred from regulating plaintiffs' property in excess of 35 acres; plaintiffs' review claims under C.R.C.P. 106(a)(4); and plaintiffs' inverse condemnation claim. The trial court also ultimately dismissed, with prejudice, plaintiffs' remaining police power claims in an order granting the county's motion for summary judgment.

Plaintiffs now appeal the trial court's dismissal of their several claims and its summary judgment entered on their sole remaining claim. They additionally appeal the trial court's entry of the contempt order and associated orders.

I.

Plaintiffs first contend that the trial court erred in dismissing their claim that their properties, as patented mining lots, were legally platted and subdivided prior to the passage of the PCLUC and that, therefore, their properties are statutorily exempt from subdivision regulation by the county. We do not agree.

Plaintiffs applied for a building permit approval on one of their individual mining lots based on their assertion that they were entitled to a development right on each separate patented mining lot claim. That application was denied by the Board based upon the determination of the County Planning and Zoning Commission that the land containing plaintiffs' mining claims had merged into two single land parcels under common ownership pursuant to the provisions of the PCLUC. In trial court, plaintiffs again claimed a development right on each patented mining claim. The trial court dismissed the claim on the grounds that plaintiffs did not state a claim upon which relief could be granted.

A.

Plaintiffs cite § 30–28–101(10)(a), C.R.S. (1986 Repl.Vol. 12A) for the proposition that a county has no authority to regulate land through its subdivision process when "such land when previously subdivided was accompanied by a filing which complied with the provisions of [state statutes] with substantially the same density, or which is divided into two or more parcels, separate interests, or interests in common. . . ." They argue that their mining claims were previously subdivided by virtue of the legally platted mining claim lots in compliance with state and federal statutes, that the platted claims are legally filed and recorded with government mineral surveys, that the density of a single residential home on a patented mining claim is

substantially the same as provided by the federal occupation and possession statutes governing mining claims, and that, therefore, they are in compliance with the provision of § 30–28–101(10)(a) which exempts their properties from county regulation.

The county argues that, even if the mining claims were subdivided pursuant to state and federal statutes, a "merger" provision in the PCLUC provides that if commonly owned and contiguous parcels of land merge into larger parcels they are subject to county subdivision regulation. The merger provision, PCLUC § 20.1, provides:

> In the event that two or more contiguous parcels of land, previously separately conveyed (or described), shall come under single ownership, the division of such land into two (2) or more lots, tracts, sites, parcels, separate interests, interests in common, or other division, even if divided along the line of a previously described or conveyed parcel, shall constitute a subdivision of land. Nothing herein shall be deemed to apply to a lot shown on any recorded subdivision plat, unless such subdivision plat shall not have received those approvals required by state or local law.

Here, plaintiffs' contention turns upon whether this merger provision in the PCLUC is a valid exercise of the county's regulatory authority so as to deny plaintiffs an exemption from county subdivision regulations. We must, therefore, determine whether the county possesses the authority to regulate plaintiffs' properties through application of the PCLUC merger provision and whether this provision is enforceable pursuant to state statutes.

■■■ As a political subdivision of the state government, a county possesses only the regulatory authority expressly conferred upon it by the Colorado Constitution and enactments of the General Assembly, along with such incidental implied powers as are reasonably necessary to carry out such express powers. And, although a county is statutorily prohibited from adopting an ordinance that is in conflict with any state statute, § 30–15–411, C.R.S. (1986 Repl.Vol. 12A), an ordinance and a statute may both remain effective and enforceable as long as

they do not contain express or implied conditions that are irreconcilably in conflict with each other. *Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, 830 P.2d 1045 (Colo.1992).

■■■ The expressly delegated authority conferred on counties by the Local Government Land Use Control Enabling Act, § 29–20–101, et seq., C.R.S. (1986 Repl.Vol. 12A) (Land Use Act), and the County Planning Code, § 30–28–101 et seq., C.R.S. (1986 Repl. Vol. 12A) (Planning Code), "leaves no doubt that land use regulation is within the scope of a county's legislative power." *Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, supra, 830 P.2d at 1056. Specifically, county authority includes the power to:

> '[D]ivide the territory of the county which lies outside of cities and towns into districts or zones of such number, shape, or area as it may determine, and, within such districts or any of them, . . . [to] regulate the . . . uses of land.' . . . County zoning regulations promulgated under the County Planning Code may include the classification of land uses and the distribution of land development and utilization. . . .

*Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, supra, 830 P.2d at 1056.

■■■ We conclude that the Land Use Act and the Planning Code authorize the county here to regulate land use in the unincorporated area of Smuggler Mountain where plaintiffs' properties are located.

Thus, we must next determine whether the county has exceeded its authority by promulgating regulations that conflict, either expressly or impliedly, with state statutes. *See Board of County Commissioners v. Bowen/Edwards Associates, Inc.*, supra.

■■■ Plaintiffs argue that regulation of the two parcels, A and B, which the Board maintains were created as a result of application of the PCLUC merger provision, is prohibited pursuant to § 30–28–101(10)(b), C.R.S. (1986 Repl.Vol. 12A), which provides:

> The terms 'subdivision' and 'subdivided land,' as defined in paragraph (a) of this

subsection (10), shall not apply to any division of land which creates parcels of land each of which comprises thirty-five or more acres of land and *none of which is intended for use by multiple owners.* (emphasis added)

In support of this supposition, they rely on *Pennobscot, Inc. v. Board of County Commissioners,* 642 P.2d 915, 919 (Colo.1982), wherein our supreme court interpreted § 30–28–101(10)(b) as follows:

By exempting divisions of property which result in parcels of land comprised of thirty-five or more acres, none of which is intended for use by multiple owners from the definition of subdivision, the legislature gave the counties no authority to impose subdivision regulations on these larger tracts.

Plaintiffs' argument would have merit if plaintiffs sought to build a single residence on each of the parcels in question. However, here, plaintiffs seek to build multiple residences on the two parcels amounting to one home per mining claim. Under these circumstances, the provisions of § 30–28–101(10)(b) do not operate to exempt land from county regulation pursuant to the plain language of the statute barring its applicability when land is "intended for use by multiple owners." Consequently, we conclude that the county was authorized to regulate the use of plaintiffs' properties and that the Board's application of the PCLUC merger provision does not exceed the scope of this authority pursuant to state statutes.

### B.

■ Plaintiffs additionally argue that their properties are exempt from county regulation pursuant to § 30–28–120(1), C.R.S. (1986 Repl.Vol. 12A) which provides, in relevant part:

The lawful *use* of a building or structure or the lawful *use* of any land, *as existing and lawful at the time of the adoption of a zoning resolution ... may be continued,* although such use does not conform with the provisions of such resolution.... (emphasis added)

Plaintiffs maintain that federal and state statutes, *i.e.,* 30 U.S.C. § 26 (1993); § 34–46–101, C.R.S. (1984 Repl.Vol. 14), allowed the construction of a house on each mining claim prior to the adoption of the PCLUC, and that, pursuant to § 30–28–120(1), they are still entitled to construct a residence on each claim. We reject this contention.

The plain language of § 30–28–120(1) provides that a use of land "as existing and lawful at the time of the adoption of a zoning resolution" may be continued. There is no dispute that, at the time the PCLUC was promulgated, plaintiffs' land was not used for residential purposes. Further, because preparation for use is not equal to actual use, here, there is no lawful use arguably to be continued. *See Tri–State Generation & Transmission Ass'n v. Board of County Commissioners,* 42 Colo.App. 479, 600 P.2d 103 (1979).

Accordingly, plaintiffs' argument that their properties are exempt from county regulation because of their status as mining claims is without merit, and the county is authorized to regulate the properties in question. We, therefore, perceive no error in the trial court's dismissal, for failure to state a claim, of plaintiffs' claim that the properties at issue here are statutorily exempt from county subdivision regulation.

### II.

Plaintiffs also contend that the trial court erred in granting summary judgment in favor of the Board on their claim that various provisions of the PCLUC constitute an unreasonable and excessive exercise of the county's police power. They argue that the Board was not entitled to summary judgment on this issue because the evidence reflects that the PCLUC subdivision definition, merger provision, and GMQS provisions exceed the county's statutorily delegated police power. We disagree.

■ The standard for determining the constitutional validity of the exercise of police power, or the government's inherent power to enact laws, be it in the enactment of land use controls or in decisions enforcing those regulations, is that the land use regulation or

enforcement must bear a rational relationship to the health, safety, and welfare of the community. *Tri–State Generation & Transmission Ass'n v. Board of County Commissioners, supra; see also Sellon v. City of Manitou Springs,* 745 P.2d 229, 233 (Colo. 1987) ("The due process clause of article II, Section 25, of Colorado's Constitution requires a reasonable relation between an ordinance and a valid interest, such as public health, safety, morals or general welfare."). Land use regulations and zoning plans are presumed to be constitutional, and it is the burden of one challenging such a regulation to demonstrate its invalidity beyond a reasonable doubt. *Board of County Commissioners v. Mountain Air Ranch,* 192 Colo. 364, 563 P.2d 341 (1977).

Authorization for local land use regulation is derived from the Land Use Act, which provides "broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." Section 29–20–102, C.R.S. (1986 Repl.Vol. 12A).

■ The Land Use Act provides local governments with extensive authority to plan for and regulate the use of land resulting in changes in population density based on the impact of development on surrounding areas and the community, pursuant to the following provisions:

(a) Regulating development and activities in hazardous areas;

(b) Protecting lands from activities which would cause immediate or foreseeable material danger to significant wildlife habitat and would endanger a wildlife species;

(c) Preserving areas of historical and archaeological importance;

(d) Regulating, with respect to the establishment of, roads on public lands administered by the federal government ...

(e) Regulating the location of activities and developments which may result in significant changes in population density;

(f) Providing for phased development of services and facilities;

(g) Regulating the use of land on the basis of the impact thereof on the community or surrounding areas; and

(h) Otherwise planning for and regulating the use of land so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights.

Section 29–20–104(1), C.R.S. (1986 Repl.Vol. 12A).

In addition, the Planning Code, § 30–28–113(1), C.R.S. (1986 Repl.Vol. 12A), authorizes counties to divide county territory into districts or zones as may be determined to be appropriate. County zoning regulations promulgated in furtherance of the Planning Code may include the regulation of population density and distribution, and the location and uses of land for trade, industry, residence, recreation, public activities, or other purposes. Section 30–28–111, C.R.S. (1986 Repl.Vol. 12A); *see Board of County Commissioners v. Bowen/Edwards Associates, Inc., supra.*

■ The PCLUC subdivision definition, which incorporates the merger provision allowing the county to regulate land in large parcels, as opposed to piecemeal regulation of individual properties, is in furtherance of the county's authorization to divide its territory through zoning regulations. *See* §§ 30–28–111 and 30–28–113(1), C.R.S. (1986 Repl. Vol. 12A). Further, it allows the county to regulate population density pursuant to § 29–20–104(1)(e), C.R.S. (1986 Repl.Vol. 12A); allows for the county to plan for the development of services and facilities pursuant to § 29–20–104(1)(f), C.R.S. (1986 Repl. Vol. 12A); and regulates the use of the land on the basis of the impact on the community or surrounding area pursuant to § 29–20–104(1)(g), C.R.S. (1986 Repl.Vol. 12A).

■ Hence, the county regulation achieves the objectives enumerated by the General Assembly, *see Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972), which objectives are presumptively constitutional and in furtherance of the promotion of community health, safety, and welfare. *See* § 30–28–115, C.R.S. (1986 Repl.Vol. 12A); *Board of County Commis-*

*sioners v. Mountain Air Ranch, supra.* As plaintiffs have not presented evidence to the contrary, we conclude that the PCLUC subdivision and merger regulations are valid exercises of the county's police power. *See Tri–State Generation & Transmission Ass'n v. Board of County Commissioners, supra.*

██ The GMQS provided for in the PCLUC establishes an annual quota system for new building permits based on a formula against which each development application is tested and scored. The applications are granted on the basis of their score, the highest granted first, and then the rest granted in descending order of score until the annual growth management quota is used. It is, as the trial court observed, an elaborate system for phasing development.

The GMQS regulation is also authorized by § 29–20–104(1), which provides for the regulation of population density, phased development of services and facilities, and land use regulation based upon the impact upon the community or surrounding areas. Sections 29–20–104(1)(e), (f), and (g), C.R.S. (1986 Repl.Vol. 12A). Thus, like the PCLUC subdivision and merger provisions, the GMQS achieves the objectives enumerated by the General Assembly, *see Nopro Co. v. Town of Cherry Hills Village, supra,* and promotes community health, safety, and welfare. *See* § 30–28–115, C.R.S. (1986 Repl.Vol. 12A); *Board of County Commissioners v. Mountain Air Ranch, supra.* We conclude that the GMQS regulation is a valid exercise of the county's police power. *See Tri–State Generation & Transmission Ass'n v. Board of County Commissioners, supra.*

Hence, there is no genuine issue as to any material fact concerning these issues, and the county is entitled to judgment as a matter of law. *See Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

Accordingly, the trial court did not err in granting summary judgment in favor of the Board on plaintiffs' claim that various provisions of the PCLUC constitute an unreasonable and excessive exercise of the county's police power.

## III.

Plaintiffs further contend that the district court abused its discretion in dismissing their claim for review of the Board's denial of their development applications pursuant to C.R.C.P. 106(a)(4). They argue that the evidence does not support the court's order upholding the Board's determination that plaintiffs had failed to comply with county subdivision regulations. They maintain that the county abused its discretion in denying their applications based on certain PCLUC submission policies. We disagree.

The Board's denial of all the applications submitted by plaintiffs was based upon the same general policy provisions of the PCLUC. The Board cited the non-conformance of all of the applications with the following four specific PCLUC policy statements: PCLUC § 2–10 (Logical Extension of Utilities); PCLUC § 2–16 (Scenic Quality); PCLUC § 2–21 (Compatibility with Existing Adjacent Neighborhoods); and PCLUC § 2–24 (Compatibility with Adjacent or Nearby Public Lands). For both LIS and General Submission applications, the PCLUC requires that the applicant demonstrate compliance with both code regulations and policies.

In its order dismissing plaintiffs' C.R.C.P. 106(a)(4) claim, the trial court determined that, contrary to plaintiffs' assertions, the PCLUC language expresses a clear intent that the policies are to apply to land use applications as standards to be used in assessing applications, the policy standards are not impermissibly vague, and the Board's findings that plaintiffs' applications are in violation of the policies are supported by ample and competent evidence in the record.

██ In determining whether the trial court has abused its discretion in upholding the Board's denial of plaintiffs' applications, we must review the record to ascertain whether the decision under review is reasonably supported by any competent evidence in the record. We also consider whether the Board misconstrued or misapplied the law. If there is a reasonable basis for the Board's interpretation of the law, the decision may not be set aside on that ground upon review. *Platte River Environmental Conservation*

*Organization, Inc. v. National Hog Farm, Inc.*, 804 P.2d 290 (Colo.App.1990).

In *C & M Sand & Gravel v. Board of County Commissioners*, 673 P.2d 1013 (Colo.App.1983), a division of this court upheld comparable standards to be applied to applications for a special use which included general requirements that the proposed use would be compatible and in harmony with the character of surrounding areas, would not result in over-intensive use of the land, and would not adversely affect community facilities and services, traffic congestion, pollution, or scenic quality of the land. As in *C & M*, general policy standards of this nature, although somewhat uncertain in the abstract, may be upheld when shown to be sufficiently definite in the context of actual application. *See South of Second Associates v. Georgetown*, 196 Colo. 89, 580 P.2d 807 (1978). *See also Theobald v. Board of County Commissioners*, 644 P.2d 942 (Colo.1982) (general land use policies and guidelines as expressed in the county's master plan are applicable criteria for future development in the county).

The record here reflects that the contested county policies are sufficiently definite to be upheld in view of the evidence presented to support their application. Moreover, the following evidence, as reflected in the record, supports the county's denial of plaintiffs' applications based upon the cited policies.

PCLUC § 2–10 (Logical Extension of Utilities) provides that it is a county policy to discourage utility extensions to areas not suitable for the type and amount of development necessary to support the service or which is likely to result from such extension; utility resources are to be constrained to areas of, or adjacent to, existing development; and extensions are to be discouraged if the cost, including environmental, exceeds the general benefit gained thereby. The record supports the trial court's observation that utility lines were not in place to serve plaintiffs' proposed development and that there is little or no private land for development in the area beyond plaintiffs' parcels and, thus, no other land to be readily served by the proposed utility extension.

PCLUC § 2–16 (Scenic Quality) sets forth the county's policy to prevent scenic degradation and to preserve and create scenic views from public places within the county. It also provides that it is county policy to minimize adverse visual effects of roads and facilities by regulating the location and use of future development when new or increased roads and facilities would be required. The record reflects that plaintiffs' proposed development would create both new facilities and new roads which would affect the scenic qualities of Smugglers Mountain as viewed from other locations in the county.

PCLUC § 2–21 (Compatibility with Existing Adjacent Neighborhoods) and § 2–24 (Compatibility with Adjacent or Nearby Public Lands) provide that it is a county policy to ensure that proposed uses are compatible with existing neighborhood uses, goals, and objectives. It is also a county policy to preserve and protect public lands from the impact of incompatible development. As observed by the trial court, the record contains data on the potential impacts of plaintiffs' proposed development on wildlife, recreation, and neighboring land.

When applied to the factual circumstances herein, as evidenced by the record, the contested county policies are sufficiently definite and their application by the Board is supported by competent evidence in the record. Accordingly, the trial court did not abuse its discretion dismissing the plaintiffs' claim for review, pursuant to C.R.C.P. 106(a)(4), of the Board's denial of their applications based on these policies.

## IV.

Plaintiffs additionally contend that the trial court erred in dismissing their inverse condemnation claims under the ripeness doctrine. We perceive no error.

In order to succeed in bringing their claim for inverse condemnation, plaintiffs have the burden of showing that the county's land use regulations preclude the use of their property for any reasonable purpose. Hence, the fundamental issue central to the determination of a "takings" claim

premised upon land use regulations is whether an aggrieved landowner retains any use for which the property is reasonably suited. *Jafay v. Board of County Commissioners*, 848 P.2d 892 (Colo.1993).

■ However, a court cannot determine whether a regulation has violated a landowner's constitutional right to reasonable use of the landowner's property until the government entity charged with implementing the regulations has reached a final decision as to how the regulations will be applied to the property in question. Thus, a "takings" claim is not ripe for review until a final decision has been made. *Reale Investments, Inc. v. City of Colorado Springs*, 856 P.2d 91 (Colo.App.1993). *See MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

■ Here, plaintiffs submitted two applications pursuant to the LIS process, which is a procedure for exemption from both the full subdivision process and from GMQS development regulation. In addition, plaintiffs submitted an application for General Submission approval of a single residence. General Submission approval is the only approval required by the county for development of a residential unit which is entitled to a GMQS exemption. Other than an application to construct single family structures on numerous patented mining lots, plaintiffs did not submit applications pursuant to the GMQS regulations for parcels A and B.

Absent submission of applications pursuant to the county GMQS process, we are unable to determine whether plaintiffs retain any use of the properties for which they are reasonably suited. *See Jafay v. Board of County Commissioners, supra.* Consequently, plaintiffs' inverse condemnation claim is not ripe for review, *see Reale Investments, Inc. v. City of Colorado Springs, supra,* and the trial court appropriately dismissed the claim on this ground.

## V.

Plaintiffs' final contention is that the district court abused its discretion in entering its order of contempt. We do not agree.

■ The trial court's order of contempt is remedial in nature in that it requires removal of the buildings plaintiffs constructed on their properties in violation of the court's preliminary injunctions. Before a remedial contempt order under C.R.C.P. 107(c) can enter, the court must find that the contemnor has the ability to comply with its order. *In re Marriage of Zebedee*, 778 P.2d 694 (Colo.App.1988). The court must also make findings which justify the imposition of the remedial sanction. *In re Marriage of Barber*, 811 P.2d 451 (Colo.App.1991).

Here, the trial court ordered that plaintiff Wilkinson be responsible for removal of the structures on the property. The county was ordered to undertake removal in the event that plaintiff failed to do so, with plaintiff responsible to the county for the cost.

Thus, contrary to plaintiffs' argument, the trial court found that the remedy specified in its contempt order could be performed. Also, contrary to plaintiffs' argument, the trial court's contempt order incorporates substantial findings detailing the grounds upon which it is based, all of which are supported by evidence in the record.

Accordingly, we perceive no abuse of the trial court's discretion in entering its order of contempt and, therefore, we will not disturb that order upon review. *See In re Marriage of Roberts*, 757 P.2d 1108 (Colo.App.1988).

Plaintiffs' remaining arguments are without merit.

The trial court's judgment and order affirming the decisions of the county and its judgment and order of contempt are affirmed.

TURSI and ROTHENBERG, JJ., concur.