SAVE PARK COUNTY, an unincorporated association, and Steven H. Cardin, individually, Plaintiffs–Appellants and Cross–Appellees,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PARK; Eunice Tokatloglou, Richard Trast, and Doug Walters in their official capacity as members of the Board of County Commissioners, Defendants–Appellees,

and

Jean Ann Leach, individually, Defendant–Appellee and Cross–Appellant.

No. 97CA0505.

Colorado Court of Appeals, Div. IV.

March 5, 1998.

Rehearing Denied April 16, 1998.

Certiorari Granted Jan. 4, 1999.

the Board found that Leach had fulfilled the conditions imposed on April 3 and gave final approval to the plat.

Both parties moved for summary judgment in the C.R.C.P. 106 action; the district court denied both motions. The district court later denied plaintiffs' request for relief, finding that the Board had acted within its discretion in approving Leach's final plat. This appeal followed.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, J. Thomas Macdonald, J. Bart Johnson, Denver, for Plaintiffs–Appellants and Cross–Appellees.

Donna A. Worley, Park County Attorney, Evergreen, for Defendants–Appellees.

Michael R. Bromley, P.C., Michael R. Bromley, Colorado Springs, for Defendant–Appellee and Cross–Appellant.

Opinion by Chief Judge HUME.

Plaintiffs, Save Park County and Steven H. Cardin, appeal the judgment of the district court affirming a decision of defendant, Park County Board of Commissioners (Board), which approved a subdivision plat submitted by defendant Jean Ann Leach. Leach cross-appeals the order finding that plaintiffs' complaint was timely filed. We affirm.

Leach originally submitted a subdivision proposal in 1983, at which time the Park County Planning Commission (Commission) recommended approval of her preliminary plan. In 1986, the Commission formally approved the final plat and recommended that it be forwarded to the Board.

Leach did not pursue further approval of the final plat until 1994, when she again appeared before the Commission, which ratified its 1986 approval and forwarded the final plat to the Board. The Board conditionally approved the final plat on April 3, 1995, requiring Leach to fulfill certain requirements to obtain final approval.

On May 3, 1995, plaintiffs filed an action in the district court pursuant to C.R.C.P. 106(a)(2) and 106(a)(4), challenging the Board's approval of the final plat. On May 4,

## I.

■ Defendant Leach contends on cross-appeal that the district court erred in not determining that it was without jurisdiction to consider plaintiffs' complaint because it was not filed within the 30–day period prescribed by C.R.C.P. 106(b). Specifically, Leach argues that the conditional approval by the Board on April 3 did not constitute a "final decision" for purposes of C.R.C.P. 106 and that plaintiffs should have waited until after the vote at the May 4 meeting to file their complaint. We perceive no error.

After a tribunal announces its decision in a quasi-judicial proceeding, a complaining party may seek review under C.R.C.P. 106(a)(4). The complaint must be filed within 30 days after the ruling is announced. C.R.C.P. 106(b); *see Danielson v. Zoning Board of Adjustment,* 807 P.2d 541 (Colo.1990); *Buck v. Park,* 839 P.2d 498 (Colo.App.1992).

Here, even if we assume that plaintiffs' complaint was filed prematurely, we conclude that the trial court acquired jurisdiction to proceed upon the May 4 final subdivision approval. Specifically, C.R.C.P. 106(a)(4) contains a procedure for appellate review by the district court of the Board's decision. And, absent a showing of prejudice, the premature filing of an appeal does not preclude the court from addressing the case on its merits. *See Kidwell v. K–Mart Corp.,* 942 P.2d 1280 (Colo.App.1996) (*cert. granted* August 18, 1997).

## II.

Plaintiffs initially contend that the transcript of the Board meetings is incomplete, thereby rendering the record on appeal in-

sufficient to permit a meaningful review. We disagree.

■ When a record is certified by an administrative tribunal to a reviewing court, the burden is on the party seeking review to show that there are imperfections in the record and that those imperfections preclude meaningful review of the tribunal's decision. *Civil Service Commission v. Doyle,* 174 Colo. 149, 483 P.2d 380 (1971).

■ Here, the transcripts of the Board's meetings concerning Leach's subdivision proposal were made from tape recordings of very poor quality. There are numerous missing words, and in some places, the speaker is unidentified. However, these omissions do not render the transcript wholly unintelligible.

In addition, there is ample evidence in the record consisting of reports, letters, minutes of Commission meetings, and other documentation that was before the Board for consideration.

Therefore, it cannot be said that, considered as a whole, the record is so insufficient as to preclude meaningful review. *See Intermountain Jewish News, Inc. v. Industrial Commission,* 39 Colo.App. 258, 564 P.2d 132 (1977) (despite omissions in transcript, relevant portions were adequate to present issue for review).

### III.

Plaintiffs next contend that the Board abused its discretion and misapplied the applicable subdivision regulations in approving Leach's subdivision proposal. We are not persuaded.

■ In reviewing an agency's decision pursuant to C.R.C.P. 106(a)(4), an appellate court must review the decision of the agency, rather than the decision of the district court. Review of findings of fact made by an agency is limited to a determination of whether that agency had competent evidence on which to base its decision. The decision must be upheld unless it is "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authori-

ty." *Board of County Commissioners v. O'Dell,* 920 P.2d 48, 50 (Colo.1996).

■ The reviewing court must also determine whether an agency misconstrued or misapplied the law. However, if there is a reasonable basis for its interpretation of the law, the decision may not be set aside on those grounds. *Wilkinson v. Board of County Commissioners,* 872 P.2d 1269 (Colo.App. 1993). The agency's interpretation of its own regulations must be reviewed to ensure that it does not amend its regulations in the guise of interpreting them. *See Anderson v. Board of Adjustment,* 931 P.2d 517 (Colo. App.1996).

■ The standards contained in subdivision regulations constitute guidelines within which an agency may exercise its discretion in determining whether a plat should be approved. *Shoptaugh v. Board of County Commissioners,* 37 Colo.App. 39, 543 P.2d 524 (1975).

### A.

Plaintiffs first assert, and defendants do not dispute, that a "Master/Sketch Plan" was not submitted for this subdivision. Plaintiffs assert that the failure to require submission of such a plan violates both Colorado law and the Park County Subdivision Regulations (County Regulations) and that, therefore, the Board committed an unlawful act by approving the subdivision plat. We do not agree.

■ Plaintiffs cite § 30–28–133(3), C.R.S. 1997, to argue that Colorado law requires the submission of a sketch plan. This section reads:

Subdivision regulations adopted by a board of county commissioners pursuant to this section shall require subdividers to submit ... in the form prescribed by the board of county commissioners, ... the following items:

. . . .

(b) relevant site characteristics and analyses applicable to the proposed subdivision including the following, which shall be submitted by the subdivider with the sketch plan....

We do not read this section as requiring the submission of a sketch plan. The language in § 30–28–133(3) mandates submissions from subdividers in the form prescribed by the board of commissioners. Although the statute goes on to mention sketch plans, it neither mandates such a submission nor qualifies the language allowing the board of commissioners to decide what form submissions should take.

■ Plaintiffs next assert that the County Regulations themselves require the submission of a sketch plan. County Regulations, art. III, states that:

> The subdivider shall submit a Master/Sketch Plan of his subdivision showing the development in its entirety, locating the primary roads and access thereto, streams, lakes, topography, vegetation, and general geology. This Master/Sketch Plan shall be submitted at the time a rezoning request is made for the subdivision.

In our view, this regulation permits the Board to require a sketch plan for purposes of subdivision approval as well as mandating such a plan for rezoning requests. However, it does not follow that the failure to submit such a sketch plan is necessarily fatal to a subdivider's application for subdivision approval.

■ Here, Leach brought a preliminary plan for her subdivision to the Commission in 1983. At that time, she submitted numerous documents and reports, including the following: a soils and geology map, with notes regarding lot size, easements, and wildlife considerations; a map entitled "Preliminary Plan"; a slope analysis map, demonstrating compliance with zoning regulations regarding the size of lots versus slope percentage for each; and other documentation.

These submissions include much, if not all, of the information which would be included in a "sketch plan," as that term is defined in the County Regulation noted above. We conclude that, since the above information was received and considered by both the Commission and the Board before the subdivision plan was approved and because there is no showing that any information was omitted that was critical to making an informed deci-

sion, the Board acted within its discretion in not requiring the submission of a formal sketch plan.

### B.

■ Plaintiffs next argue that the Board acted illegally and abused its discretion in not requiring Leach to submit a formal drainage plan for the subdivision. We disagree.

Plaintiffs first argue that § 30–28–133(3)(c), C.R.S.1997, requires submission of a drainage plan. However, that provision only requires the submission of "a plat and other documentation showing the layout or plan of development, including, *where applicable,* the following information . . . ." (emphasis added) Therefore, if a board of commissioners deems certain information as not being pertinent to a proposal it has before it, the statute does not direct it to require the submission of such irrelevant material.

■ Plaintiffs next argue that County Regulations, art. IV, § C.5, requires the submission of a formal drainage plan, and that the Board was not authorized to waive this requirement. This section states, in part: "Complete drainage systems for the entire subdivision area shall be designed by a professional engineer. . . ." This section, therefore, necessarily presumes that a drainage system would be required for the property under consideration.

However, the County Regulations do not prohibit the Board from waiving this requirement if such a drainage plan is deemed unnecessary.

A letter from a professional engineer regarding his review of site data for the subdivision pursuant to this provision of the County Regulations was submitted to the Board. This letter states, among other things, that the site is not affected by off-site storm water; there are no natural water courses on the site; and there are features of the site which would accommodate storm runoff. The letter concludes with the engineer's opinion that an engineered drainage study and design is unnecessary. There is also a letter from the Planning Director for Park

County that explains the history of the requirements for drainage studies in Park County.

Both of these letters are competent evidence upon which the Board could base its decision not to require a drainage plan, and we may not reweigh that evidence. The Board, therefore, did not abuse its discretion by not requiring Leach to submit a formal drainage plan.

## C.

Plaintiffs further urge that the Board abused its discretion in finding that Leach had met the requirements of the Regulations regarding a potable water supply. We do not agree.

■ Plaintiffs first argue that proof of a potable water supply must be made at the preliminary plan stage and that, since this was not done, the preliminary plan should not have been forwarded to the Board for consideration. However, there is nothing in the County Regulations to indicate that the water quality issue must be fully resolved at this stage; the Board, acting within its discretion, could address this issue up to and at the time of final plat approval. The record here shows that water potability was, in fact, a continuing issue considered by the Board until final plat approval was given on May 4, 1995. Therefore, we find no error in the Board's procedure in this regard.

■ Plaintiffs also argue that, because of a radioactivity concern raised by well water test results, Leach should have been required to drill additional wells to determine water quality. However, Leach complied with County Regulations, art. IV, § C.6.h(1), regarding the number of test wells to be drilled. She was not required to do more than that.

■ Plaintiffs' main contention concerning water quality is that the Board did not follow its own regulation regarding Gross Alpha radioactivity in well water tested on the subdivision.

County Regulations, art. IV, § C.6.e., states that: "If these limits set out below are exceeded, this will constitute cause for rejec-

tion of water supply...." The specified limit for Gross Alpha radioactivity in that section is "15 pCi/L (+ -)" (picoCuries per liter). The Regulation continues as follows: "Should either Gross Alpha or Gross Beta radioactivity exceed the specified limit as set forth above, additional tests will be required for Uranium and Radium–226 for identification of the source."

If one reads this section as a whole, it appears that a Gross Alpha reading in excess of 15 pCi/L is not automatically cause for rejection of a water supply. While the Board may reject a water supply in such a case, the language regarding additional testing for uranium and radium–226 gives the Board discretion to require further testing before an ultimate decision is reached.

In this case, a second test performed on March 11, 1995, on the well drilled on Lot 5 showed an Alpha level of 16, thus exceeding the standards in the Regulations by 1 pCi/L. The Board could have found that the results complied with the Regulations based on the "(+ -)" notation after the Gross Alpha standard of 15 pCi/L.

However, the Board required additional testing at the meeting held on April 3. It conditionally approved Leach's subdivision plat contingent upon radium–226 testing, as provided for in the Regulations. The minutes of the Board Meeting held on May 4 stated that: "[Leach] presented the water testing that showed her to be in compliance."

In addition, the Board had previously received and considered a letter from the Colorado Department of Public Health and Environment dated March 21, 1995, which opined that the water tested from the wells on Leach's subdivision property "appears to be in compliance with the State and Federal Regulations of the United States of America." Although the author of this letter later distanced herself from the conclusions in her March 21 letter and emphasized the responsibility of the county in determining water potability, the weight to be accorded to the document was a matter for the exercise of the Board's discretion.

The Board also sought the involvement and considered the opinion of the Park Coun-

ty Director of Environmental Health and Preservation. The director did not object to the procedures followed by the Board at the various public hearings on these issues.

From a review of the record, it is apparent that the Board repeatedly considered the question of potability of the water supply for Leach's subdivision. Since competent evidence on this question appears in the record, we may not reconsider the Board's determination as to the sufficiency of that evidence.

### D.

▉ Plaintiffs additionally argue that, because of the possibility of a radiation hazard on the property, § 30–28–133(3)(b)(III), C.R.S.1997, and County Regulations, art. IV, § C.1, require an evaluation of potential radiation hazards. We disagree.

Plaintiffs' argument appears to be based on the presence of Gross Alpha radioactivity in the test well water. However, as discussed above, the water potability issues were repeatedly addressed by the Board. In addition, at the preliminary plan stage, Leach submitted a soils geology and ground water report for her subdivision, as well as a soils and geology map. The Board also considered this issue during a meeting held in January 1995.

Because the record contains competent evidence that the property in question is not in an area of potential radiation hazard, we conclude that the Board did not err in not requiring Leach to submit further evidence on this issue.

### E.

Plaintiffs further argue that the Board did not require a "complete" preliminary plan to be submitted to referral agencies, and that the preliminary plan approved in 1986 had lapsed before the final plat approval in 1995. We disagree.

Plaintiffs argue that a "complete" preliminary plan was not submitted to referral agencies as required by §§ 30–28–110(4)(c) & 30–28–136, C.R.S.1997, and the County Regulations because the preliminary plan changed from 34 to 36 lots and did not contain a drainage plan, a radiation hazard study, or sufficient evidence of water potability.

▉ However, it is within the Board's discretion to find that the addition of 2 lots to a 34–lot subdivision proposal is not a significant change requiring resubmission of a preliminary plan. Additionally, as we have previously noted, the Board acted within its discretion in finding that a drainage plan and a radiation hazard study were not required for this particular proposal and that the water quality issues were adequately addressed.

Plaintiffs further argue that comments received from the referral agencies in 1983 were outdated and that, therefore, new comments from those agencies should have been required. However, we are not aware of any authority for such requirement.

▉ Plaintiffs also argue that the preliminary plan approval obtained in 1984 and finalized in 1986 had lapsed and that the Board therefore abused its discretion in failing to require Leach to start over at the preliminary plan stage. We do not agree.

Plaintiffs' argument is based on County Regulations, art. V, § D which reads in part: "The Planning Commission shall then transmit the Final Plat to the Board of County Commissioners for their approval or other action." Plaintiffs argue that the word "then" requires more immediate action than that which occurred in this case and that the time interval between preliminary plan approval in 1984 and the final plat approval in 1995 is necessarily too long.

However, neither the state statute nor the County Regulations contain a deadline for submission of a final plat to a board of commissioners. In this case, the Board sent Leach back to the Commission in 1994; the Commission ratified its 1986 recommendation that the plat be approved; the Board then conducted a series of hearings before granting final plat approval on May 4, 1995. We conclude that this procedure is not contrary to law and, therefore, will not reverse the Board on these grounds.

The order and judgment are affirmed.

NEY and RULAND, JJ., concur.